Argued June 8; reversed June 26; rehearing denied July 24;
motion to recall mandate denied September 11, 1934

## NIEDERMEYER, INC., *v.* FEHL ET AL.

(33 P. (2d) 960, 35 P. (2d) 477)

*E. E. Kelly,* of Medford (E. C. Kelly, T. J. Enright, and H. K. Hanna, all of Medford, on the brief), for appellants.

*George M. Roberts,* of Medford (William M. McAllister, of Medford, on the brief), for respondent.

BAILEY, J.  Niedermeyer, Inc., a corporation, instituted this suit to foreclose a mortgage on real property in Medford, Oregon, given by defendant Earl H. Fehl and his wife to plaintiff's assignor, L. Niedermeyer, to secure the payment of a promissory note for $3,500 dated April 1, 1926, payable on or before two years after date, with interest at the rate of 7 per cent per annum; on which note plaintiff acknowledged that one year's interest had been paid.

On the same date that the complaint in this suit was filed the plaintiff herein instituted a suit against the Pacific Record Publishing Company, a corporation, Earl H. Fehl and Electa A. Fehl, his wife, and oth-

ers, as defendants, to foreclose a chattel mortgage given to secure the payment of a note for the sum of $6,443.98 executed and delivered by the corporate defendant to L. Niedermeyer, plaintiff's assignor; which note was dated January 18, 1924, payable on or before five years after date, with interest at 6 per cent per annum. On this latter note there were endorsed the following payments:

| | |
|---|---|
| December 31, 1924, by cash in bank | $300.00 |
| March 9, 1925, Kroschel commission | 150.00 |
| May 1, 1926, work on P. & N. building | 250.00 |
| May 30, 1926, work on P. & N. building | 250.00 |
| November 19, 1926, "share of Atwood note" | 100.00 |
| November 19, 1926, printing handbills | 2.00 |
| March 18, 1927 | 443.98 |
| November 19, 1926 [1927] payment "to lodge" | 100.00 |
| August 10, 1920, labor 223 days | 2,230.00 |

The two suits were consolidated for the purpose of trial in the circuit court. A decree was entered in favor of the plaintiff in this suit and against Earl H. Fehl and Electa A. Fehl for $3,500, together with interest thereon at the rate of 7 per cent per annum from April 1, 1927, for $350 attorneys' fees, for costs and disbursements, and for the foreclosure of the real property mortgage.

In the second suit Earl H. Fehl, Electa A. Fehl, his wife, and other parties were made defendants in the proceeding against the corporation, in order to bar the individual defendants from any interest in the personal property covered by the mortgage and, apparently, to preclude the Fehls from questioning thereafter certain credits, due Earl H. Fehl for services performed by him, endorsed on the note involved in the second suit. A decree was entered in that suit in favor of the plaintiff and against the Pacific Record

Publishing Company for $4,004.64, with interest thereon at the rate of 6 per cent from March 16, 1932, for $400 as attorneys' fees, and for costs and disbursements. This decree also denied the defendants Fehl any recovery on their affirmative answers in both suits and barred them from any interest in certain real property in Medford, Oregon, on which was located the Holly theater, which real property and theater will hereafter be referred to in detail. The decree also barred the other individual defendants from any interest in the personal property covered by the mortgage.

From both decrees the defendants Fehl have appealed to this court.

In several affirmative answers to the complaint in this proceeding, to wit, the suit to foreclose the mortgage given to secure the $3,500 note, the defendants Fehl allege as offsets against any recovery on said note by the plaintiff and as counter-claims, several transactions between the defendant Earl H. Fehl and L. Niedermeyer by reason of which Fehl contends that Niedermeyer became indebted to him in large sums of money.

The first of these defenses alleges that a contract was entered into by Earl H. Fehl on or about June 17, 1927, to purchase certain real property in Medford, Oregon, for the sum of $10,000, on which contract he paid $100, and that his interest therein was taken over by Niedermeyer, who paid the balance of the contract price. Thereafter Fehl, according to his answer, obtained a tenant who took a ten-year lease, at a gross rental of $65,600, of a theater to be included in a building to be erected thereon, and other tenants for the balance of the building for a period of five years at a gross rental of $11,100. Fehl claims that

for such assistance and for obtaining the installation of a street lighting system on the street in front of said property he is entitled to the sum of $10,000 as the reasonable value of his services.

As a second affirmative defense, setoff and counter-claim, Fehl alleges the construction of the building, later known as the Holly theater, at a cost of $71,966, contending that the building was erected under his supervision as general contractor or general superintendent, for which services he demands judgment for $7,185, approximately 10 per cent of the cost of construction.

For a third affirmative defense, setoff and counter-claim, Fehl re-alleges certain paragraphs of his first defense, relating to the purchase of the land on which the theater was built, and avers that the land was purchased by himself and Niedermeyer as a joint venture or partnership undertaking; that said property was transferred by Niedermeyer to the plaintiff, Niedermeyer, Inc.; that at the time of such transfer the land had enhanced in value; and that Fehl's share of such increase in value was the sum of $5,225, less certain interest due Niedermeyer on the purchase price and less certain taxes paid by Niedermeyer.

When the taking of testimony was about concluded, the defendant Fehl asked permission to file an amended answer, but, although a copy of an amended answer appears in the abstract of record filed by defendants as appellants in this court, the supplemental abstract of record filed by respondent states that the amended answer was never filed of record. It does not appear here in the judgment roll. Nevertheless, we believe it immaterial whether or not the amended answer was filed, because the allegations to which we have referred are embodied in both the original pleading and the purported amended answer, and the

disposal which we here make of the case renders unimportant any variance in those two pleadings.

These two suits, which were consolidated for hearing, were tried on the theory that the defendant Fehl was entitled to have credited on the $3,500 note in the first suit, which note was given by the Fehls for money advanced to them by Niedermeyer in 1926, the payments endorsed on the note in the second suit made after the execution of the $3,500 note, unless Niedermeyer had authority to endorse such payments on the note for $6,443.98.

A brief review of the facts which more or less relate to both of these suits is requisite to an understanding of the controversy between the parties in both cases. During the year 1919 steps were taken to organize a certain irrigation district in Jackson county. Owners of some ten thousand acres of land were unwilling to be included in the district, among whom was L. Niedermeyer, owning six hundred acres, on which the assessment for the proposed improvement would be exceedingly heavy. The then existing newspapers in Medford appeared unfriendly to the interest of the landowners who did not desire to be included in the district and it seemed advisable to buy or set up a newspaper which would be friendly to them. A meeting was held and Mr. Newman, an attorney of Medford, was given by Niedermeyer some $5,000 with which to purchase a newspaper plant. This money was used by Mr. Newman in the purchase of a news printing plant then located at Ashland and installing it in Medford. The plant was then turned over to Earl H. Fehl, who with his wife then gave a note for $5,000 without interest for five years to L. Niedermeyer, secured by a chattel mortgage on the newspaper plant and a real property mortgage on certain lands owned

by the Fehls in California. It was understood, however, at the time the plant was installed and the note executed, that a corporation was to be organized to take over and operate the plant, and in accordance therewith the defendant in the other suit, Pacific Record Publishing Company, a corporation, was organized and the plant transferred to that corporation. The plant from the time it was installed in Medford was used in publishing a newspaper in the interest of those opposed to the organization of the irrigation district.

Further money was advanced by Niedermeyer after the execution of the $5,000 note, for the enlargement of the plant, with the result that in 1924 the corporation executed the note for $6,443.98 to take up the original $5,000 note and to cover additional advances and accrued interest. This note was secured by a chattel mortgage on the newspaper plant and equipment, and a mortgage on the Fehls' real property in California, the same land that was mortgaged to secure the original $5,000 note.

There were some fifty or fifty-one stockholders in the Pacific Record Publishing Company. The majority of the common stock was owned by Earl H. Fehl and his relatives. They, however, did not own a majority of the preferred stock.

For several years prior to 1927 Fehl had attempted to interest Niedermeyer in the erection of a theater in Medford, but had not been successful. In June, 1927, on learning of the intention of a local fraternal order to sell its vacant property in Medford, Fehl entered into a contract to purchase the property for $10,000, on which he made a deposit of $100 and was to pay an additional $400 upon receiving the abstract for the property, and the balance of the purchase price in

two payments on designated dates. Before any further sum had been paid by Fehl, Niedermeyer took over and assumed the contract of purchase and paid the balance of the price of $10,000, less $250 discount made for cash. Fehl then attempted to find some one either to lease the ground for building and operating a theater thereon or to lease a theater building to be constructed on the property. To carry out this purpose, Fehl made several trips to Portland, San Francisco and Klamath Falls. Finally, in the fall of 1929, he found one Walter Leverette, who was willing to enter into a ten-year lease of a theater building at a gross rental of $65,600. This arrangement was satisfactory to Niedermeyer, who was averse to going into the theater business himself, but not to devoting his property to that use. Both Niedermeyer and Fehl were anxious to expedite the building of the theater, and in the fall and winter of 1929 Fehl supervised excavation for the basement and the construction of foundation and walls for the new building.

It is Fehl's contention that the building was constructed principally according to plans and specifications which he had prepared, although there is abundant evidence that one Frank Clark, an architect of Medford, prepared plans for the building exclusive of the basement and exterior walls, and that bids on plumbing, wiring, heating and other facilities mentioned as "specialties", referred to and were based on the architect's plans. The entire building when completed cost approximately $71,966. Fehl claims that he was the general contractor or superintendent on this work and is entitled to compensation therefor to the extent of 10 per cent of the total cost of the building. The plaintiff, on the other hand, maintains that Fehl was not the general contractor or superintendent, but

merely a foreman, and that the reasonable compensation for his services is $10 per day, or a total of $2,230 for 223 days' work; which amount was credited on the note given by the Pacific Record Publishing Company to Niedermeyer.

While the building was under construction, in the early part of April, 1930, Niedermeyer and his relatives organized Niedermeyer, Inc., plaintiff herein, and on April 7, 1930, Niedermeyer assigned to that corporation the two notes hereinbefore mentioned, and in addition transferred to the corporation the real property on which the theater was being built and all other real and personal property owned by him. The organization of Niedermeyer, Inc., and the transfer of the property to it by Niedermeyer were not known to the defendant Fehl until some time later. The evidence is not definite as to whether or not he knew about those occurrences before the building was completed.

Before or immediately after the construction of this building Fehl obtained month-to-month tenants for certain stores and offices therein. No leases, however, were made by Niedermeyer with any of the tenants of the building, with the exception of Leverette for the Holly theater.

■ The first question to be decided is whether or not Niedermeyer was authorized to credit upon the corporation's note payments hereinbefore mentioned as having been endorsed on that note. The payment of December 31, 1924, of $300, is admitted by all parties concerned to have been paid by the corporation and properly applied on the note for $6,443.98. All the other items endorsed on that note, except the $2 for printing handbills, were either for money paid to or services performed for Niedermeyer by Fehl. The

Kroschel commission of $150, which was earned by Fehl individually, was endorsed on the larger note as a credit under date of March 9, 1925, and antedates the $3,500 note given by the Fehls on April 1, 1926. This commission was earned by, and due to, Fehl prior to the execution of the $3,500 note and it would appear that the latter note would have been reduced proportionately, if it had not theretofore been applied on the corporation note. Referring to the item of $2 for printing handbills, there is no evidence that such amount should be credited on the individual note of the Fehls.

Niedermeyer testified that Fehl had authorized the crediting of all the items above mentioned on the corporation's note. On cross-examination he admitted definitely that there was no understanding about applying the $100 designated as "payment to lodge" on the corporation note. The item of $2,230 is the amount which Niedermeyer of his own volition allowed Fehl for services performed in the construction of the Holly theater building. He stated that it had never been agreed between himself and Fehl as to the amount which the latter was to receive. He further testified that Fehl had consented to have credited on the corporation note the amount due him personally for such work, but he could not recall the date of such agreement, although he thought it was during the construction of the building. Niedermeyer was not at all definite as to the time or place of Fehl's agreement to have the items above listed credited on the corporation note. On his direct examination, after taking up the first two items endorsed on the corporation note, he testified as follows:

"Q. How did it happen that that [referring to the $150 endorsement] was credited on the promissory note of the Pacific Record Publishing Company, if it

was commission which Mr. Earl H. Fehl was entitled to?

"A. Well, we had agreed on that between ourselves, Mr. Fehl and myself, that anything that he got should be credited on these notes, he would be called to pay it in that way."

In referring to the agreement concerning the credit of $2,230 for work, endorsed on the corporation note, Niedermeyer testified as follows:

"Q. When was this agreement had that it should be applied on the corporation note?

"A. Anything that he owed me could be applied on the corporation note, it was an agreement we had years ago."

On cross-examination as to these different credits, Niedermeyer gave the following testimony:

"Q. Mr. Niedermeyer, didn't he ask you to put these credits on that note that was signed by himself and wife and give this real property over here as—give a mortgage on it as security? Didn't he ask you to credit it on that?

"A. Which item?

"Q. All these items you have credited?

"A. Oh, there was items giving him credits on the note before the other note was in existence.

"Q. But after the two notes were made didn't he ask that these credits be put on his personal note rather than the corporation note?

"A. He might.

"Q. Well, as a matter of fact, didn't he?

"A. I don't know.

"Q. Didn't he in Frank Newman's office ask you when you and Mr. Frank Newman and he were present?

"A. I don't remember.

"Q. And you arbitrarily made those credits on the corporation note?

"A. I made it on the corporation note, yes.

"Q. Now, the reason you made all these credits on the corporation note was because that newspaper was

poor security and wasn't paying its expenses, and the personal property or the personal mortgage on his real property was better security—isn't that it?

"A. That is partly it, but that was the oldest paper and had been in existence so long I wanted that cleaned up.

       \*       \*       \*       \*       \*

"Q. Did he ever know you had made these endorsements on the chattel note?

"A. Yes, with the exception of the last one.

"Q. What did he say about that?

"A. I took the note over to him the first time or two and showed him the credits I had given him.

"Q. Did he object to it?

"A. No."

According to Niedermeyer's testimony, he exhibited the corporation note to Fehl after the first one or two items had been endorsed on it. The first item, as already stated, was a cash payment by the corporation itself. The second item was dated prior to the execution of the Fehls' individual note. Niedermeyer's testimony relating to an agreement between himself and Fehl as to these endorsements seems to have antedated the execution of the Fehls' personal note. He admits that some of the endorsements were not made on the note on the dates there designated. This is obvious, for he has given credit as of November 19, 1926, for the $100 paid by Fehl to the lodge; which payment was not made until June 17, 1927. The $2,230 is credited as of August 10, 1930, but Niedermeyer admits that the credit was not endorsed until after he had been subpoenaed to testify as to what his indebtedness was to Fehl after the judgment against Fehl in the Parr case, which judgment was not entered until March 8, 1932. Although the corporation note was given two years prior to the personal note, nevertheless it was not due until five years after date, whereas the

personal note was due two years from date. In the former note the interest was 6 per cent; and in the latter, 7. Either note could be paid on or before its due date. The corporation note, however, contained this provision as to payment on the principal: "Privilege granted of paying any amount on principal any time after due." And this note was not due at the time Niedermeyer attempted to credit payments on the principal. The record discloses no reason why Fehl should have authorized the crediting of those items on the corporation note rather than on his personal obligation. The Pacific Record Publishing Company had never made a profit, and any payment on its note would inure primarily to the benefit of its preferred stockholders.

Fehl testified definitely and positively that he had never authorized Niedermeyer to endorse on the corporation note any item of credit due him personally or any money which he individually paid to Niedermeyer. There are other facts in the case which go to disprove Niedermeyer's assertions in this respect. He, however, attempts to bolster up his contention with a letter which was written by Fehl on April 2, 1931, to Mr. Newman, who had been asked by Niedermeyer to attempt to effect a settlement with Fehl. There is nothing, however, in the letter, taking it as a whole, which we consider as fortifying Niedermeyer's position. The evidence in the case does not warrant the crediting on the corporation note of any of the items thereon appearing, except the first two, to wit: the $300 paid by the corporation on December 31, 1924, and the $150 Kroschel commission entered as of March 9, 1925.

The allegation of the defendants Fehl that the real property in Medford on which the Holly theater was built was purchased as a joint venture or as partner-

ship property is not supported by the evidence in the case and must be rejected. The evidence is undisputed that, after the property had been bought and paid for by Niedermeyer and before the theater building had been constructed, Niedermeyer was willing to sell the land for what he had paid, plus 6 per cent. Fehl's activities in connection with the property, heretofore described, were undertaken either to make a profit for himself on the sale of the real property or to earn compensation for his services in obtaining tenants.

■ Fehl was not successful in selling the property, but did procure a tenant for the theater on a written lease for ten years satisfactory to Niedermeyer, at a gross rental, as stated, of $65,600. It is the plaintiff's contention that Niedermeyer did not agree to pay a commission to Fehl for this service, although the evidence does not seem to bear out that view of the transaction. In this regard, Niedermeyer testified as follows:

"Q. Did Mr. Fehl make any statement to you or did you discuss with him the matter of whether or not he would obtain a commission for the services which he rendered?

"A. He always told me he was not charging any commission. When I bought the lot particularly, I asked him how much he was expecting to get out of it and he said, 'Nothing.' I asked him whether the lodge was paying him a commission and he said, 'No.'

"Q. Was the same thing said relative to the Leverette lease?

"A. I never talked about a commission there."

Fehl's testimony was to the effect that he considered $3,000 reasonable compensation for obtaining the tenant for the theater. The testimony, however, of experienced real estate operators of Medford was to the effect that the Portland rate, which had been

adopted and used in Medford, called for 1 per cent of the gross rental as such commission, which in this instance would amount to $656. This testimony regarding the prevailing schedule of commissions in Medford was not denied. It is true that Fehl spent a great deal of time and money in attempting to find some one to take the property on a ground lease and construct a building, and in trying to find others who would lease a building to be constructed on the land. The evidence does not warrant awarding compensation to Fehl for his expenses incurred in such efforts. The most that he is entitled to receive is 1 per cent of the rental in the term lease he actually made, namely, $656. Renting of other parts of the building was not contracted on fixed terms, and the record is silent as to how much, if any, commission Fehl is entitled to receive for obtaining monthly tenants.

■ In regard to the construction of the building, Fehl contends that he is entitled to 10 per cent of the cost of the completed structure. This is on the theory that he was the general contractor for its construction. Approximately half or more of the cost of the building was for "specialty" installations such as heating, wiring, plumbing, and so on, contracts for which Niedermeyer made, on bids based on the architect's plans and specifications. Fehl, nevertheless, disbursed in excess of $22,000 deposited in a checking account by Niedermeyer, for labor and materials. He spent a great deal of time at the building during its construction. The evidence does not support his contention that he was a general contractor or general superintendent and so entitled to 10 per cent of the cost of the building. The experts' testimony was to the effect that the general contractor would not be entitled to any percentage on "specialty" contracts as above de-

fined. Even if Fehl were entitled to a fee of 10 per cent of the money actually disbursed by him and not allowing per diem pay, his compensation would not be appreciably greater than was allowed by Niedermeyer. The facts will not support a greater compensation for the work performed by Fehl in the construction of this building than the $2,230 allowed him.

To recapitulate: we hold that Fehl is entitled to have applied on his personal note, that of $3,500 dated April 1, 1926, all the items hereinbefore set out as having been applied on the corporation note, with the exception of the first two items credited on the latter instrument; and, in addition thereto, to have $656 as commission for effecting the leasing of the theater. The item of $656 is to be applied on the note as of November 16, 1929, the date of the lease; and the other items are to be applied as of the dates when credited on the corporation note, except that of $100 for "payment to lodge", which was endorsed as of November 19, 1926, and should be credited as of the date when Fehl paid the money to the fraternal order, that is, June 17, 1927.

4. These credits are more than sufficient to extinguish the personal note. Therefore, that obligation was fully paid on the date of the last credit, to wit: August 10, 1930. No personal judgment, however, can be rendered herein in favor of defendants Fehl against L. Niedermeyer, as he is not a party to this proceeding; and we are not here intending to intimate that they have any basis for such a judgment at this time.

The decree appealed from in this suit is reversed and the suit dismissed; the defendants Fehl to recover their costs and disbursements in this court and in the circuit court.

RAND, C. J., and BEAN and CAMPBELL, JJ., concur.

Motion to recall mandate denied September 11, 1934

ON MOTION TO RECALL MANDATE
(35 P. (2d) 477)

BAILEY, J. On the appeal of this case the appellants did not file a supersedeas bond, and the respondent, plaintiff in the circuit court, after the perfection of the appeal proceeded to sell to a third party the real property covered by the mortgage which was foreclosed by the circuit court, for the sum of $5,372.43.

■ After the mandate in this proceeding was issued a motion was filed by the appellants to recall and modify it by allowing the appellants to recover from the respondent the sum realized from the sale of said real property. No showing is made as to whether the sale was made before or after the cause was disposed of by this court, and the record on appeal, other than the motion above mentioned, fails to disclose the fact of such sale. There was, therefore, nothing before this court at the time the mandate was issued to warrant the inclusion in the mandate of any order requiring a restitution to the appellants by the respondent of the fund so received, or for a judgment for that amount.

■■ The circuit court, however, has jurisdiction to correct the error committed by it in entering its decree in favor of the plaintiff, and to restore to the appellants all "that they have been compelled to lose under the erroneous decree". When, by proper showing, it is made to appear to the circuit court that the plaintiff proceeded, while the appeal was yet pending, to sell the mortgaged property, that court should, upon receipt of the mandate reversing the decree appealed from, exercise its inherent power and direct complete recovery by the appellants of the entire amount received from the sale of such property, by entry of

judgment therefor: *Coker & Bellamy v. Richey,* 108 Or. 479 (217 P. 638); together with interest thereon at the legal rate from the date of receipt thereof by the respondent.

The motion of the appellants to recall and modify the mandate is hereby denied, and the motion of the respondent to strike said motion from the files of this court is likewise denied.

RAND, C. J., and BEAN and CAMPBELL, JJ., concur.