Virgil J. Iantosca *vs.* Florinda M. Iantosca.

Suffolk.    November 4, 1948. — May 3, 1949.

Present: Qua, C.J., Ronan, Wilkins, Spalding, & Williams, JJ.

*Deed*, Acknowledgment. *Evidence*, Presumptions and burden of proof, Certificate of acknowledgment. *Gift*. *Personal Property*, Transfer of title, Business.

The mere fact that a recorded deed of real estate bore a certificate by a notary public of its acknowledgment by the grantor was sufficient in itself to warrant a finding of its due acknowledgment.

A finding that an intended gift of an entire taxi business by a husband to his wife was completed by a sufficient delivery was not plainly wrong on evidence of an informal statement signed by the husband and delivered to his wife, of letters later sent her by him, and of conduct of the parties, although no formal instrument of conveyance was executed or delivered.

Petition in equity, filed in the Probate Court for the county of Suffolk on March 28, 1947.

The case was heard by *Wilson*, J.

*C. W. O'Brien*, for the petitioner.

*C. D. Driscoll*, for the respondent, submitted a brief.

Williams, J.    This is a petition in equity in which the petitioner, formerly the husband of the respondent, seeks

a reconveyance by his former wife of the land and single
family house at 19 Braemore Road, Brighton; a return
of the assets of a taxi business located at Cleveland Circle
in said Brighton and registered by the petitioner under
the name of Cleveland Taxi Service; and an accounting
of the profits derived from said real estate and taxi business
from March 13, 1942. In her answer the respondent asks
for a determination that the taxi business belongs to her
and also says that the petitioner has been guilty of laches.
The judge of the Probate Court made findings of material
facts and the evidence is reported. The petitioner has
appealed from a decree determining that the property at
19 Braemore Road is the property of the respondent and
that the business of the Cleveland Taxi Service with its
assets is the property of the respondent, ordering the peti-
tioner to perform any act or acts necessary to transfer "full
possession and control of said business and assets to the
respondent," and ordering the respondent to execute an
agreement to indemnify the petitioner and hold him harm-
less from any claims or demands relating to the business
arising from its operation since March 13, 1942.

The judge found that the parties were married in 1932
and have one child, a daughter. At some time domestic
trouble developed. On September 5, 1940, while living
apart from his wife, the petitioner purchased the real estate
in question for $6,000, paying for it $600 in cash and giving
a purchase money mortgage with the usual amortization
provisions for the balance. After the purchase the respond-
ent and the daughter returned to live with the petitioner
in the newly purchased house, the family at that time in-
cluding the petitioner's mother and his son by a former
marriage. The petitioner had owned and operated the
Cleveland Taxi Service since 1929, and the house was a
convenient place for the location of the business telephone
which was connected with a street telephone at the taxi
stand. The respondent attended to the telephone calls.
Early in 1942 the domestic situation became worse and the
petitioner decided to enlist in the navy. In order to do so,

under the then existing governmental regulations, it was necessary for him to obtain and file an affidavit of his wife to the effect that she was self sustaining. At that time he owned and operated seven taxicabs, which were partly paid for. Sometime in February, 1942, he prepared and handed to his wife a paper written by him in longhand and signed "Fitz," a name by which he was sometimes called, reading as follows: "I will transfer in your name, the house and furniture as it stands, the Cleveland Taxi Service, and Tel. No. Asp. 8700, 7 cabs, meters, medallions, registrations, the repair shop and all equipment belonging to the Cleveland Taxi Service, the office furniture and equipment, or anything else used in connection with the business. I will not make any demands on you in the future for anything at any time. I will take 1 car, motor boat 'Flee,' the camp at Marshfield, my personal belongings such as hunting and fishing equipment, souvenirs and trophies, all tools that I may need to secure a position. My mother will take only her personal belongings. My son will take only his personal belongings. It is understood that you will not make any demands on me in the future regardless of the success or failure of either of us. This will become legal only when your and my attorney agree to terms, and in a legal manner. Fitz." Subsequently there was a conference of the parties, their attorneys being present, at 19 Braemore Road on the evening of February 23. The proposed settlement was satisfactory to the respondent. At that time it was arranged that a deed of the house to the respondent was to be drawn together with the papers for the transfer of the assets of the taxi business, including an assignment of the insurance policies and of the medallions which evidenced the taxi licenses issued by the police commissioner and a bill of sale of the tangible property. His wife having signed the necessary affidavit, the petitioner enlisted in the navy on March 13 and left home. There was evidence that he gave his wife $600 in cash, a written list of instructions relating to the conduct of the taxi business by the respondent, and a power of attorney on the Brookline Trust Company

so that the respondent could draw checks on the checking account of the taxi business. No other paper was drawn or executed except a deed to the Braemore Road house.

From the evidence it appears that the deed to the Braemore Road house was drawn by the petitioner's attorney shortly after the conference of the parties on February 23, 1942, and was sent to the petitioner. The petitioner signed it and left it with his papers or, according to his testimony, "left that there in her care in case anything happened to me she would have it. . . . If I was killed in action or lost in action I left the deed there so my family would get the benefit of it." Q. "Did the giving of the deed have anything to do with the fact you had to show your wife was self supporting? A. Yes, it would have." The respondent testified that sometime after the petitioner left home she found the deed to the house among the papers of the taxi business and placed it among her own personal papers. The petitioner, after his return, found it and took possession of it. The respondent thereafter demanded its return through her attorney. The petitioner gave it to his attorney who then redelivered it to the respondent. The petitioner testified that it was delivered contrary to the instructions given his attorney. The respondent signed the deed on March 7, 1946, and caused it to be recorded in the registry of deeds on March 25, 1947. The deed is in evidence and bears the signatures of the two parties and an acknowledgment purporting to be that of the petitioner taken by his attorney, as notary public, under date of March 7, 1946. The petitioner testified that he never acknowledged it.

After March 13, 1942, the respondent operated the taxi business and from the proceeds supported herself and daughter, paid the mortgage interest, insurance and taxes on the house, $1,212.06 on the principal of the mortgage, and the insurance and excise taxes on the taxicabs. She gradually replaced the seven taxicabs with new taxicabs, which she had registered in her own name. She also paid for repairs on the house, for an oil burner installed therein, and, with one exception, all premiums on life insurance policies of her-

self, her child, the petitioner and his mother. She made a substantial payment on the funeral bill of the petitioner's mother, who died while he was in the service. From the time the petitioner left on March 13, 1942, he contributed no money for the support of his wife or child. Out of a governmental allotment of $80 per month which was sent to her she used $20 to pay for government bonds for the child and, by arrangement with the petitioner, she sent back to him the balance of $60. While the petitioner was away he wrote at least three letters in which he stated in substance that under the agreement made with his wife the taxi business belonged to her. The petitioner was discharged from the navy on May 25, 1945. On his return home he lived with his family in the Braemore Road house but did no work other than some odd jobs around the house. His wife continued to operate the business, and the taxi drivers all received their instructions from her and looked to her as the one in authority. The petitioner did not participate in the conduct of the business, but early in 1946 by means of an untrue statement made to the registry of motor vehicles and without the knowledge of his wife he obtained a transfer of the registration of the seven new taxicabs from his wife's name into his own. On March 25, 1947, the respondent closed out the account of the taxi service in the Brookline Trust Company by drawing a check for the balance of $265.84, and on the following day filed a libel for divorce against the petitioner. On March 28 the petitioner filed a cross libel for divorce and the present petition in equity. The libel of the petitioner was heard and dismissed before the hearing on the petition in equity. A decree nisi was entered on the respondent's libel.

The principal matter for decision is whether the judge was correct in concluding, as is implied from the decree, that title to the real estate and personal property of the petitioner vested in the respondent.

The written proposal by the petitioner for a transfer to his wife of a substantial portion of his property appears to have been intended by him as a basis for a settlement of their

marital difficulties, and also as a means of making herself sustaining for the purposes of the desired affidavit.

Transfer of title to either real or personal property by way of gift is not effected merely by an expression of intent to make a gift at some time in the future. There must be a completely executed transfer. *Simpkins* v. *Old Colony Trust Co.* 254 Mass. 576, 581. So far as the Braemore Road property is concerned, the petitioner executed a deed of it to his wife, and either gave it to her or left it with his papers where she could later find it. It is unnecessary to determine whether there was delivery of the deed before March, 1946, when it was delivered to her by the petitioner's attorney who could have been found authorized to make such delivery. Title in any event did not pass until the deed was recorded on March 25, 1947. G. L. (Ter. Ed.) c. 209, § 3. The only doubt cast upon the effectiveness of the deed to convey title when so recorded arises from the contention of the petitioner that no evidence was introduced by the respondent to prove that the deed was acknowledged. The deed, however, bears the certificate of acknowledgment of a notary public who at the time was acting as the petitioner's attorney. The burden was on the petitioner to prove that the deed was ineffective to pass title and, although he testified that he never acknowledged the deed, the judge could disbelieve him and find proper acknowledgment from the evidence of the certificate alone. In *McOuatt* v. *McOuatt*, 320 Mass. 410, 413, it was said, "The certificate of acknowledgment furnished formal proof of the authenticity of the execution of the instrument when presented for recording." It "is of evidentiary character" although its "recitals . . . may be contradicted." In *Albany County Savings Bank* v. *McCarty*, 149 N. Y. 71, 83, it was said, "as between the parties, a certificate of acknowledgment, when read in evidence, makes out a prima facie case as strong as if the facts certified had been duly sworn to in open court by a witness, apparently disinterested and worthy of belief. The legal presumption of the proper per-

formance of official duty by a public officer requires that this effect should be given it." See also *Young* v. *Duvall*, 109 U. S. 573, 576, 577; *Pierce* v. *Feagans*, 39 Fed. 587; *Jeffreys* v. *Federal Land Bank*, 238 Ala. 97, 98, 99; *Ware* v. *Julian*, 122 Cal. App. 354, 355; *McDonald* v. *McDonald Holding Corp.* 122 Fla. 115, 125; *Houlihan* v. *Morrissey*, 270 Ill. 66. The judge's conclusion that ownership of the property at 19 Braemore Road vested in the respondent was not plainly wrong.

As to the taxi business, there was evidence from which the judge could find that the petitioner intended to give the business as a whole to his wife. The question is whether such intended gift was completed by delivery. That the petitioner believed he had accomplished his purpose is shown by his letters written while in the service. When he left home on March 13, 1942, the respondent took possession of the tangible property consisting of taxicabs, spare parts, office furniture and tools, as well as the records, documents and office papers pertaining to the business. This was done with the approval of the petitioner and in accordance with the understanding of the parties. The judge could infer that the registration certificates of the taxicabs, the licenses from the police commissioner, and the insurance policies were physically present among the office papers. The bank account was not assigned but a power of attorney was sent to the respondent to enable her to make withdrawals from the account.

"It is a settled principle of the common law that title to personal property having physical existence cannot pass by parol gift unless there is such delivery of possession to the donee as the nature of the property permits." *Millett* v. *Temple*, 280 Mass. 543, 549. A "policy of life insurance . . . without an assignment, like a chattel may be the subject of a legal gift inter vivos . . . . It is also settled that evidences of debt, as distinguished from the debt itself, that is, chose in action without writing, may be the subject of a valid gift and as such constitute an equitable assignment of the debt or other obligation. In either case by an unquali-

fied delivery and acceptance the title passes, the gift becomes perfect and carries with it an implied irrevocable power to enforce it in the name of the donor." *Mangan* v. *Howard,* 238 Mass. 1, 5. *Ponlain* v. *Sullivan,* 308 Mass. 58. ". . . apart from conveyance by deed title to personal property does not pass by gift unless the donor makes an actual or symbolic delivery of the property to the donee. Full intent to give is not enough." *Mulloy* v. *Charlestown Five Cents Savings Bank,* 285 Mass. 101, 105. *Gowell* v. *Twitchell,* 306 Mass. 482, 487. It could have been found that all the assets of the business, including the tangible property and the evidences of intangible rights but excepting the right to the bank account, were delivered by the petitioner to the respondent and accepted by her. At least there was actual delivery of sufficient assets to warrant a conclusion that symbolic delivery of the entire business had been effected. The delivery was sufficient to transfer to the respondent the domination and control of the business as a whole. *Monaghan* v. *Monaghan,* 320 Mass. 367, 369, 370. *Herrick* v. *Dennett,* 203 Mass. 17. The judge was warranted in finding that the business thereafter belonged to the respondent. The petitioner's contention that he is entitled to an accounting, if possibly entitled to consideration in reference to the real estate, has not been argued and is treated as waived.

*Decree affirmed.*