Argued July 15, affirmed September 23, 1970

FEHL, *Respondent, v.* HORST ET AL, *Appellants.*
474 P2d 525

*Walter D. Nunley*, Medford, argued the cause and filed a brief for appellants.

*Merlin Estep*, Salem, argued the cause for respondent. On the brief were Estep & Daniels.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE and TONGUE, Justices.

McALLISTER, J.

This case is a sequel to a turbulent chapter in the history of Jackson County.[1] It is a suit by the executrix of the estate of Earl H. Fehl to quiet title to a 30-foot lot on West Sixth Street in Medford, improved with a building known in this record as the Herald Building. The defendants are the heirs of Corinthia E. Stailey, who was Earl Fehl's mother-in-law. The trial court quieted title in plaintiff and defendants appeal.

---

[1] Niedermeyer v. Pac. Record Pub. Co., 147 Or 528, 33 P2d 966 (1934); Niedermeyer v. Fehl, 148 Or 16, 33 P2d 960, 35 P2d 477 (1934); State v. Fehl, 152 Or 104, 52 P2d 1118 (1935); Niedermeyer, Inc. v. Fehl, 153 Or 656, 57 P2d 1086 (1936); Fehl v. Martin, 155 Or 455, 64 P2d 631 (1937); Fehl v. Lewis, 155 Or 499, 64 P2d 648 (1937); In re Fehl, 159 Or 545, 81 P2d 130 (1938); In re Fehl, 166 Or 472, 112 P2d 1037 (1941); Jackson County v. Fehl, 176 Or 154, 155 P2d 312 (1945); Fehl v. Jackson County, 177 Or 200, 161 P2d 782 (1945).

Earl Fehl acquired the lot by quitclaim deed in 1925. It was thereafter improved by the construction thereon of a one-story building occupied in part by the Pacific Record Herald, a weekly newspaper edited by Fehl.

In 1932 Fehl was elected county judge of Jackson County. In 1933 he participated in the theft from the courthouse of the 1932 election ballots, was convicted of burglary and sentenced to serve four years in the penitentiary.[2] A few days before Fehl was sentenced he quitclaimed his interest in the Herald Building to his wife Electa Fehl.

By deed dated and recorded on September 19, 1934, Electa Fehl quitclaimed the Herald Building to her mother, Mrs. Stailey. The record does not disclose why this deed was executed. Mrs. Stailey had lived with Earl and Electa Fehl from 1932 and continued to live in the Fehl home until her death in 1949. There is no evidence that Mrs. Stailey ever conveyed the property. Her estate was not probated.

Fehl was confined in the penitentiary until 1936. On December 20, 1937, he was adjudged insane and committed to the State Hospital where he remained until June 17, 1941, when he was released on parole and finally discharged on July 1, 1942.

The evidence is virtually undisputed that sometime after Fehl's release from the State Hospital and not later than 1946, he assumed control and management of the Herald Building. Roy Hewitt, a Salem attorney, began to represent Fehl while he was a

---

[2] For a history of Fehl's conviction, imprisonment, and of his commitment to the State Hospital, see Fehl v. Jackson County, supra n. 1, 177 Or at 202-203. The parties stipulated that the trial court might take judicial notice of the report of that case.

patient in the hospital and continued to act as his attorney until Fehl's death in 1962. Hewitt testified that after Fehl's release from the hospital he was in actual possession of the property and paid all the taxes thereon. The tax receipts for the years 1946 to 1961 are in evidence and show that Fehl paid the taxes. Earl and Electa's federal income tax returns for the years 1946, 1947, and 1948 are also in evidence and show that the Fehls reported rental income from the Herald Building.

Electa Fehl died in April 1949 and in 1950 Earl married Lilyan H. Fehl, the plaintiff in this case. She testified that during their marriage from 1950 until Earl's death in 1962 he treated the Herald Building as his own, personally rented the building, collected the rents, paid the taxes and reported the rents as his income. The property was included in the inventory of Earl Fehl's estate.

The trial court found in favor of plaintiff on two alternate theories. First, that Fehl remained the beneficial owner of the property at all times by virtue of a resulting trust. We find no evidence to support that theory. In fact, plaintiff placed little reliance on the trust theory and in her brief stated that "the principal theory upon which the plaintiff actually tried and submitted the case was that of adverse possession."

The trial court also found that Fehl had reacquired title to the property by adverse possession. The trial court found adverse possession for the entire period after Fehl's release from the State Hospital in 1941 to Fehl's death in 1962, a period of more than 20 years. We agree with the finding of the trial court only as to the period after July, 1949.

We divide the period covered by plaintiff's

claim of adverse possession into two segments. First, the period while Mrs. Stailey was still alive and, second, the period after her death. In our view the evidence does not support a finding of adverse possession as against Mrs. Stailey. Mrs. Stailey had long been a member of the Fehl household and the evidence indicated that a normal close family relationship existed between the two. Mrs. Stailey was in her nineties when Fehl was released from the hospital and was almost one-hundred years old when she died in 1949.

■ Where there is a close family relationship between the owner of the property and the adverse claimant the courts have required a greater showing that the possession was hostile or adverse. *Chase v. Lavelle,* 105 Neb 796, 181 NW 936 (1921). As between parent and child, possession by one of the land of the other is presumed to be permissive and for the holding to become adverse there must be an open assertion of hostility and the owner must be made aware of the hostility. *Chase v. Lavelle,* supra. See, also, *Norgong v. Whitehead,* 225 Minn 379, 31 NW2d 267 (1948) (brothers); *Flora v. Gusman,* 76 Idaho 188, 279 P2d 1067, 1071 (1955) (mother/daughter and son-in-law). The same principles have been applied in boundary dispute cases: *Hehnke v. Starr,* 158 Neb 575, 64 NW2d 68 (1954); *Bellamy v. Shryock,* 211 Ark 116, 199 SW2d 580 (1947).

In *Parrish v. Minturn,* 234 Or 475, 382 P2d 861 (1963), this court has approved the ruling that a heavier burden of proof is required to establish adverse possession between members of a family. Although that case also involved the grantor-grantee relationship, it is applicable to the situation in this case. This court has also required a greater than normal showing of

fair dealing in will cases where a beneficiary is in a confidential relationship with the testator. A "confidential relationship" in those cases appears to include an element of dependence or trust on the one side, and superiority or influence on the other. *In re Estate of Manillus Day*, 198 Or 518, 530, 257 P2d 609 (1953); *In re Knutson's Will*, 149 Or 467, 489-494, 41 P2d 793 (1935). See, also, *Egr v. Egr et al*, 170 Or 1, 131 P2d 198 (1942).

■ There is no evidence that Fehl ever informed Mrs. Stailey that his assumption of management and control of the Herald Building was adverse to her. Fehl's conduct in resuming management and control of the Herald Building may have been with the consent and approval of Mrs. Stailey. We decline to speculate that Fehl's conduct was hostile to Mrs. Stailey and that his hostility was brought home to her. There is no evidence to support such a finding.

On the other hand, there is no dispute about adverse possession after Mrs. Stailey's death. The defendants stipulated that for all the time after Mrs. Stailey's death the income from the Herald Building was reported by Fehl on his tax returns and "that he treated and handled the property in all respects as his property." We agree with the trial court that as against the defendants the evidence establishes title in Fehl by adverse possession based on his conduct after July, 1949.

Although defendants concede Fehl's possession during the critical period from 1949 until 1962 they counter with the contention that Fehl perpetrated a fraud on them by telling Mrs. Stailey's daughter, the defendant Olive Horst, that her mother owned no property at the time of her death. They contend that

as a result of Fehl's fraud they did not find out until early 1964 that the Herald Building stood in Mrs. Stailey's name.

■ The trial court held that it could not consider the question of fraud because it had not been pleaded. The rule is settled that if fraud is to be relied upon, either offensively or defensively, it must be pleaded. *Grandy et al v. Robinson*, 180 Or 315, 325-326, 175 P2d 463 (1947); *Heisler v. Hamilton Mammoth Mines Co.*, 110 Or 403, 408, 223 P 735 (1924); Clark on Code Pleading (2d ed 1947) 312-313, § 48.

■■ The rule that requires the pleading of fraud is applicable in this case. The defendants rely on the rule that fraudulent concealment of a cause of action by the person liable will toll the running of the statute of limitations until such time as the real facts are, or ought to be, discovered. One of the necessary elements of this fraudulent concealment is an actual intent to deceive or defraud. 173 ALR 576, 578; 54 CJS 219, 225, Limitations of Actions § 206; *Hinkle v. Hargens*, 76 SD 520, 81 NW2d 888, 891 (1957); *Draws v. Levin*, 332 Mich 447, 52 NW2d 180, 183 (1952); *Burton Township of Genesee County v. Speck*, 378 Mich 213, 144 NW2d 347 (1966). Since defendants failed to plead the alleged fraudulent concealment of the cause of action, they are not entitled to rely on that defense either in the trial court or in this court.

We find that Fehl acquired title to the Herald Building by adverse possession during the period from 1949 until 1962. The decree of the trial judge is affirmed.