**Freda David Knight, Co-Executor of the Estate of Zelma
Turner Grant v. Lawrence Hescock, Executor of
Florida Turner DiBenedetto Estate**

[404 A.2d 107]

No. 157-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed June 5, 1979

Dissent Filed June 11, 1979

Motion for Reargument Denied June 21, 1979

*John Morale,* Wells River, and *Harry A. Black* of *Black & Plante,* White River Junction (On the Brief), for Plaintiff.

*Weber, Fisher, Perra & Gibson,* Brattleboro, for Defendant.

**Per Curiam.** This was a declaratory judgment action between the estates of deceased sisters over title to land in Grafton. Plaintiff's estate claimed title through a 1950 deed to her from defendant's decedent and her husband. Defendant's estate claimed through a quitclaim deed of the same date back to decedent, not recorded until 1955. This quitclaim was asserted to be a forgery, on the basis of lack of recollection by one attesting witness and the opinion of a handwriting expert. The trial court found execution of the quitclaim by plaintiff's decedent, and also made extensive findings relating to adverse possession since 1950. Plaintiff appeals.

The first claim of error relates to reliance by the court upon the ancient documents rule, so-called, asserting that Vermont law requires possession of an ancient document to be for a thirty-year period, a requirement not here met. But that rule is one governing the admissibility into evidence of a document, with prima facie validity, in the absence of other authentication. *Aldrich* v. *Griffith,* 66 Vt. 390, 404, 29 A. 376, 380 (1893); 29 Am. Jur. 2d *Evidence* § 856. Error is not made to appear, because the deed in question was not only unobjected to, but marked as an exhibit by agreement.

The deed bears on its face proper acknowledgement. Although this does not conclusively establish execution, it is strong proof thereof, not to be overthrown on evidence of

doubtful character. *Albany County Savings Bank* v. *McCarty*, 149 N.Y. 71, 80–83, 43 N.E. 427, 430–31 (1896); *Holmes* v. *First Union Trust & Savings Bank*, 362 Ill. 44, 49, 198 N.E. 671, 673 (1935); *Iantosca* v. *Iantosca*, 324 Mass. 316, 321–22, 86 N.E.2d 59, 61–62 (1949).

Since the trial court upheld execution of the deed upon evidence properly before it, and rejected the contention of forgery, the judgment below is supported. Consideration of the alternative defense of adverse possession is not required.

*Judgment affirmed.*

Hill, J., dissenting. In 1974 Zelma Turner Grant brought this action against the estate of Florida Turner DiBenedetto, her sister, seeking a declaratory judgment as to the ownership of certain land in Grafton, Vermont. She died prior to trial and a co-executor of her estate was substituted as plaintiff. The co-executor appeals from an order of the Windham Superior Court declaring the defendant estate owner of the disputed property. Two claims of error have been briefed and argued by the plaintiff. I believe that both are valid and therefore dissent.

I.

Certain factual matters absent from the per curiam opinion should be noted. The land involved here was occupied by Florida DiBenedetto and her husband from the early 1930's until his death sometime prior to 1953. In 1956 Lawrence Hescock came to live with her. She continued to live on the property until her death in 1970. Mr. Hescock stayed on after her death and now seeks to sell the property in the discharge of his duties as executor of the estate.

The land records of the Town of Grafton indicate that a warranty deed of the disputed property from Mrs. DiBenedetto and her husband to Mrs. Grant dated June 20, 1950, was recorded the following day. They further indicate that a quitclaim deed also dated June 20, 1950, from Mrs. Grant back to Mrs. DiBenedetto individually was not recorded until January 3, 1955, almost five years later.

In her complaint, Mrs. Grant alleged that the quitclaim deed was a forgery and that she was the lawful owner of the

property. The defendant denied the forgery and raised the affirmative defense of title by adverse possession.

At trial, the plaintiff's handwriting expert testified that Mrs. Grant's signature on the quitclaim deed was forged. This testimony was uncontradicted. In addition, the plaintiff secured the testimony of a woman whose signature appears as an attesting witness on both the warranty and quitclaim deeds. This woman testified that she recalled witnessing the warranty deed from Florida DiBenedetto and her husband to Mrs. Grant, but she could not recall witnessing a deed from Mrs. Grant "to anyone at any time," nor would she identify her own signature on the quitclaim deed as being genuine.

The trial court concluded that, as an ancient document, the quitclaim deed was presumptively valid and that the plaintiff's evidence was insufficient to rebut this presumption. It therefore found that the deed was genuine.

The court also found that during her lifetime Mrs. DiBenedetto paid all taxes and other costs incident to ownership and occupancy of the premises. Upon moving in Mr. Hescock assisted her, and since her death he has paid all assessments. Mrs. Grant never occupied the premises, never made any financial contribution to upkeep or maintenance, and did not visit the premises with any frequency. Neither she nor anyone on her behalf made any claim to the subject premises until after the death of Mrs. DiBenedetto. The court concluded, therefore, "that Florida, Florida and Defendant, and then Defendant have maintained and occupied the premises openly, notoriously, and with claim of right for more than 15 consecutive years," and entered an order declaring that "[t]he subject premises are owned by the Estate of Florida T. DiBenedetto."

## II.

In its traditional sense the ancient documents rule relates only to authentication. McCormick on Evidence § 323, at 747 (2d ed. 1972). It provides that a writing is sufficiently authenticated if the party offering it establishes that it (1) is thirty years old, (2) unsuspicious in appearance, and (3) produced from a natural place of custody. *Id.* § 223, at 549–50. See also *Giddings* v. *Smith,* 15 Vt. 344, 349 (1843). However, a separate aspect of the rule, as the per curiam opinion ac-

knowledges, is that such a document is "prima facie" valid. See 7 Wigmore on Evidence § 2146 (J. Chadbourn rev. 1978). This case is concerned only with this latter aspect of the rule.

As noted, the rule requires a document thirty years old. "The period of 30 years signifies of course the period in which the specific document has been *in existence*. The *purporting* date is of itself not determinative; for anybody may have forged the written date but yesterday. Accordingly this existence of the document 30 years ago must be somehow shown." *Id.* § 2138, at 725. There is no independent proof in the record that this deed existed prior to its filing in January of 1955. It was offered in evidence in October of 1977. Because it was not shown to have existed for thirty years prior to the offer, the deed should not have been presumed valid as an ancient document. Even if one relied on the purported date of execution, this deed would not satisfy the thirty year requirement.

Furthermore, even if the deed in question was an ancient document, the plaintiff's evidence was sufficient to rebut any presumption of validity. Once a party against whom a presumption operates produces evidence "fairly and reasonably tending to show that the real fact is not as presumed, the office of the presumption is performed, and the fact in question is to be established by evidence as are other questions of fact, without aid from the presumption, which has become *functus officio*." *Tyrrell* v. *Prudential Insurance Co. of America,* 109 Vt. 6, 23, 192 A. 184, 192 (1937). Certainly the testimony of the plaintiff's expert alone was sufficient to rebut any presumption of validity.

The per curiam opinion acknowledges the trial court's reliance on the rule but holds that "[e]rror is not made to appear, because the deed in question was not only unobjected to, but marked as an exhibit by agreement." The opinion does not discuss the merits of the plaintiff's claim and thus implies that by stipulating to the document's admissibility the plaintiff waived the right to dispute the presumption's applicability. Of course there was an incentive to so stipulating, because the plaintiff wanted the document in evidence to prove that it was forged. Putting that aside, however, this portion of the per curiam opinion fails to differentiate between the

two aspects of the ancient documents rule discussed above and, in so doing, misconstrues the nature of the claim now being made.

I agree that by stipulating to the document's admissibility the plaintiff waived any right to object to its presence in the record. I dissent from the notion that the stipulation bars any claim that the trial court misused that evidence by erroneously considering it presumptively valid. The plaintiff concedes that the trial court was entitled to consider the deed for what it was worth; she objects only to the trial court's overestimation of the deed's evidentiary value.

The claim that this deed is presumptively valid as an ancient document was made by the defendant, the party to benefit, after the trial but before the court made its findings, and the plaintiff disputed it. Thus the trial court was given a fair opportunity to consider, evaluate, and rule on the question, and it erred when it did so. This Court has a duty to acknowledge the error and right the wrong, but rather than do so the per curiam opinion holds that the trial court should not be put in error either because the plaintiff's attorney failed to make an irrelevant objection or failed to raise the proper objection prematurely.

The per curiam opinion recognizes the fallacy in this argument because it seeks to justify the trial court's finding that the quitclaim deed is genuine by resort to an entirely different proposition of law. The opinion states:

> The deed bears on its face proper acknowledgement. Although this does not conclusively establish execution, it is strong proof thereof, not to be overthrown on evidence of doubtful character.

This statement leaves one with the unmistakable impression that in the judgment of this Court the plaintiff's case is of "doubtful character." That judgment is not supported by the record.

Two deeds supposedly were executed on the same day. The first, a warranty deed, was promptly recorded. The second, a quitclaim deed alleged to be a forgery, was mysteriously filed five years later. An attesting witness whose name appears on

both deeds recalls the first transaction but not the second and expressly declined to identify her signature on the quitclaim deed as being genuine. Finally, a handwriting expert, whose credentials and opinions have not been questioned here, testified that the signature of the grantor on the quitclaim deed was forged. To my mind this is a very credible case of forgery.

## III.

The unstated but guiding conclusion embodied in the per curiam opinion is that the trial court did not err in finding that Mrs. Grant's signature on the quitclaim deed was genuine. I cannot agree.

V.R.C.P. 52(a) provides that findings of fact must stand unless clearly erroneous. That is, the finding must stand if there is any credible evidence which fairly and reasonably supports it. *Seaway Shopping Center Corp.* v. *Grand Union Stores, Inc.,* 132 Vt. 111, 116–17, 315 A.2d 483, 486–87 (1974). But the clearly erroneous standard should not be used to insulate a finding prompted by the application of an erroneous legal standard. *Shull* v. *Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 155 (8th Cir. 1977) (citing 9 C. Wright & A. Miller, Federal Practice & Procedure §§ 2585–86 (1971)). Such a situation presents a question of law correctable by this Court for mere error. See *United States* v. *United States Gypsum Co.,* 333 U.S. 364, 394 (1948). Furthermore, " '[t]he purpose of findings is to make a clear statement to the parties, and to this Court if appeal is taken, of what was decided and how the decision was reached.' " *New England Power Co.* v. *Town of Barnet,* 134 Vt. 498, 503, 367 A.2d 1363, 1366 (1976) (quoting *Wells* v. *Village of Orleans, Inc.,* 132 Vt. 216, 221, 315 A.2d 463, 466 (1974)). Sifting through the record to uphold a finding resulting from an erroneous view of the law renders this purpose hollow at best and violates the principle that this Court does not sit as a finder of fact. In my opinion, this case should be remanded to the trial court—which is sole judge of the weight of evidence, the credibility of witnesses, and the persuasive effect of testimony—so that it can make untainted findings.

Even subjecting this finding to the generous standard of V.R.C.P. 52(a), it is, in my judgment, clearly erroneous. The

deed standing alone before the strong contrary evidence amassed by the plaintiff is insufficient to support a finding that it is genuine. To hold otherwise one must conclude that Mrs. Grant was willing to perjure herself when she commenced this action, find that the handwriting expert's opinion was false (something the trial court did not do), and believe that the suspicious filing of the quitclaim deed, the lack of recollection on the part of the attesting witness, and her inability to identify her own signature were mere coincidence. This I am unwilling to do.

## IV.

The trial court also concluded that Mrs. DiBenedetto had obtained title by adverse possession. The plaintiff contends that the court erred in this because it failed to expressly find that Mrs. DiBenedetto's possession was hostile to her sister's interest in the property. I agree.

The burden of establishing title by adverse possession is on the party claiming it. *Higgins* v. *Ringwig*, 128 Vt. 534, 538, 267 A.2d 654, 656 (1970). Hostility—the only element questioned here—is required to show that the use of the property was incompatible with the rights of the true owner. *Percival* v. *Fletcher*, 121 Vt. 291, 296, 155 A.2d 737, 740 (1959). A permissive use no matter how long continued will never ripen into title by adverse possession. *Price* v. *Rowell*, 121 Vt. 393, 398, 159 A.2d 622, 626 (1960). It is not necessary, however, for the adverse claimant to voice a claim to the property if his use is such as to indicate that an adverse claim is being asserted. *Russell* v. *Pare*, 132 Vt. 397, 404, 321 A.2d 77, 82 (1974). Under our law, possession such as involved here, "without countervailing evidence of permission, gives rise to a presumption of claim of right," and "the use of the disputed parcel under a *prima facie* and evidentiarily established claim of right firmly establishes the hostility of that use." *Id.,* 321 A.2d at 82–83. See *Zuanich* v. *Quero*, 135 Vt. 322, 325, 376 A.2d 763, 765 (1977). There is no evidence of permission in this record. Thus, if the above stated presumption applied to the instant case the plaintiff's claim would fail.

It should not, however, be applied to the present situation involving, as it does, a close family relationship between the

alleged owner of the property and the adverse claimant. In such circumstances "the courts have required a greater showing that the possession was hostile or adverse." *Fehl* v. *Horst,* 256 Or. 518, 522, 474 P.2d 525, 527 (1970). Accord, *Lobro* v. *Watson,* 42 Cal. App. 3d 180, 116 Cal. Rptr. 533 (1974); *Chasteen* v. *Chasteen,* 213 So. 2d 509 (Dist. Ct. App. Fla. 1968); *Smith* v. *Smith,* 95 Idaho 477, 511 P.2d 294 (1973). The family relationship increases the possibility of a permissive use to a point where application of the presumption is unwarranted. See 3 A. Casner, American Law of Property § 15.4, at 772–73 (1952). Thus, I would remand the case for an express finding that Mrs. DiBenedetto's possession was hostile to her sister's interest in the property.