## HARRISON v. WEBB.

Common Pleas Court, Cuyahoga County.

No. 599996.  Decided June 18, 1951.

Moss & Metzenbaum, Jerome Klein, Robert Disbro, Cleveland, for plaintiff.

Calfee, Fogg, McChord & Halter, John B. Calfee and Carl Schlenderberg, Cleveland, for defendant.

274

**OPINION**

By BLYTHIN, J.

This cause came to trial and at the outset the defendant presented her motion for a dismissal on the ground that the facts stated in the amended petition are not sufficient to support a cause of action.

The facts alleged are simple and undisputed insofar as necessary for adjudication of the issue raised by the motion. Plaintiff occupied, as a tenant, and as her home, certain premises owned by defendant. She was notified to leave, and action was instituted in a Justice of the Peace court to evict her. The sole basis of the action was stated in the notice and in the court complaint as follows:

"the plaintiff and her husband now have an immediate and compelling need to occupy said premises themselves."

A writ of restitution was issued and it is alleged in the petition in this cause that it was issued on the basis of the statement contained in the notice and petition, already herein quoted.

It is claimed by plaintiff in this cause that defendant (plaintiff in the eviction action) did not thereafter occupy the premises but held same vacant for some period of time and then sold the same. Applicable to the relation of the parties hereto when landlady and tenant was Section 209 (a) (2) of the Housing and Rent Act of 1947, providing that no such tenant could be evicted unless for specific reasons or purposes, one of them being:—

"(2) The landlord seeks in good faith to recover possession of such housing accommodations for his immediate and personal use and occupancy as housing accommodations."

Plaintiff now claims that the use of court process to evict her on the ground stated constituted a fraud upon her and upon the court and prays for the damages she claims to have been suffered by her.

If this cause is tried on the merits there will be defenses urged by defendant beyond the question here being discussed, but defendant claims that the basis of the claim asserted in the petition is res judicata and that such fact clearly appears on the face of the petition itself.

The real issue being decided on the motion can be stated as follows:

May the plaintiff recover damages in this cause on the basis of her claim that the facts stated in the forcible entry and detainer action and upon which her eviction was brought about, were false, untrue and amounted to a fraud upon her. In other words, is the truth of those facts res judicata and beyond further judicial inquiry between the same parties?

Taking plaintiff's arguments somewhat in their inverse order we first come to consideration of §10450 GC. It is plaintiff's claim that the provisions of that section afford to her a right to seek relief in this cause.

"Sec. 10450 GC. Judgments under this chapter either before the justice, or in the court of common pleas, shall not be a bar to a later action brought by either party."

The word "chapter" refers to "Chapter 13, Forcible Entry and Detainer." Plaintiff stresses the fact that the provisions of the quoted section must refer to cases beyond mere forcible entry and detainer because the right to bring a "later action" is saved to "either party." It stands to reason that a tenant would not bring as a later action—a suit for eviction. While it is true that a tenant would not institute an eviction action he might well find it necessary to bring an action involving, or arising from, the tenancy. In a forcible entry and detainer action under the chapter mentioned, the sole issue is the right to present possession. To determine that the landlord or lessor is entitled to possession could very well leave rights between the parties undetermined and it could well be that lessee would wish those rights determined and, for the purpose, appeal to a court of competent jurisdiction for appropriate relief. Neither the wording of the statute, nor any rational interpretation of its language can possibly sustain a claim that it declares an exception to the doctrine of res judicata so as to enable a second inquiry into facts already determined in a proper judicial proceeding within the jurisdiction of the adjudicating court.

Williams v. Gordon, 53 Abs 464 (86 N. E. [2] 34) (Court of Appeals of Cuyahoga County, Ohio, Jan. 31, 1949.).

This case is a perfect example of what has just been stated. The cause was instituted in the Municipal Court of Cleveland and it was held that its jurisdiction in forcible entry and detainer was not greater than that of the J. P. courts. For that reason a question of title or an equitable defense could not be entertained.

Syll. 1. "In the trial of a forcible entry and detainer case the procedure to be followed by the Municipal Court of Cleveland is that provided for in a court of the justice of the peace."

Syll. 3. "The court of the justice of the peace has no jurisdiction to try question of title as a defense in forcible entry and detainer case."

Syll. 4. "In action of forcible entry and detainer the Municipal Court of Cleveland was without power to consider the defendant's defense of a parol lease which was offered

at argument of motion for new trial and such defendant was entitled to enjoin execution of writ of restitution pending determination of his rights under such lease as determined in court of competent jurisdiction."

Here is an action properly brought by defendant (lessee) after adjudication by the justice in the forcible entry and detainer action and coming as a clear example of an action by the "either party" of the statute.

After citing a number of authorities treating the question of jurisdiction the court says:

"From these inconsistent authorities, it would seem from the better reasoned of them, that the mere fact plaintiff might be required to offer evidence in the first instance of his title, as is frequently necessary, to show his right of possession when defendant is not estopped to deny title, does not defeat the jurisdiction of the justice; but evidence on behalf of defendant as to any equitable defense should be admitted for the purpose of defeating plaintiff's case, and when such evidence, or the pleadings or evidence of plaintiff, disclose a bona fide controversy as to title, on which right of possession depends, or other equitable defense, the justice is without jurisdiction and should dismiss the action, or he should render judgment for defendant, which is no doubt another way of saying he is without jurisdiction to adjudicate such issues. Such a judgment could not be res judicata. **(Sec. 10450 GC.)**"

The court later quotes with approval from the case of Schmidt v. Schmidt, 1 O. N. P. (N. S.) 177 as follows:

"The petition herein plainly invoked the equity powers of this court by pleading facts and praying relief which a justice of the peace has no power to give. While this action may involve a review of the adjudication of the justice, yet there is no objection to such a proceeding for §10450 GC expressly provides 'judgments either before the justice or in the court of common pleas under this chapter (Chap. 9, Title III, regulating forcible entry and detainer) shall not be a bar to any action brought by either party'."

Before the paragraph last above quoted the court said in 1 Ohio N. P. (N.S.) 177 and 178:

"The defendants plead, by way of defense, that the matter and things set up in the petition are res judicata, having been submitted to a justice and a jury, in the action of forcible entry and detention, and passed upon adversely to the plaintiff. * * * And in Gladwell v. Hume, 18 C. C., at p. 848, the court reasons well on the practical independency of such a proceeding before a justice and such an action as the one at bar.

"It may be interesting to inquire why §6601 GC (now §10450 GC) should contemplate that a **defendant** in an action of forcible entry and detainer might desire to bring an 'after action,' for it expressly provides that judgment shall not be a bar to 'any after action brought by **either** party.' Our reason is suggested by the questions involved in this very case at bar. If an equitable defense may be interposed in an action of forcible entry and detainer, it is difficult to see why the judgment of the justice, if free from errors of law, should not be conclusive. If, however, such a defense can not be interposed in such an action, it is readily seen why some 'after action' might be necessary, on the part of the defendant to secure his rights." (Emphasis by the court.)

For a helpful discussion of the principle involved we refer also to Gladwell v. Hume, 18 C. C., 845, supra.

Bieler v. Rist, 18 O. N. P. (N. S.) 534:

Syllabus: "A tenant who surrendered possession of premises after a judgment of eviction had been rendered against him by a magistrate has no claim against the landlord in tort for damages because of an unjustifiable eviction."

At page 536 the court said:

"Counsel for the cross-petitioner cites §10450 GC, reading: 'Judgments under this chapter, either before a justice of the peace or in the court of common pleas, shall not be a bar to a later action brought by either party.' This refers to an action in forcible entry and detainer and can not have any reference at all to a tort growing out of an alleged eviction where it was made pursuant to the judgment."

This court has failed to find a single authority, and none has been called to his attention, in which it is even suggested that the "later action" by "either party" of §10450 **GC,** refers to any proceedings permitting a reinquiry into facts presented to a justice in a matter **within** his jurisdiction. The statutory provision keeps the door wide open to consideration and adjudication of issues between the parties which were **not** within his jurisdiction. The court must therefore hold that the provisions of §10450 **GC,** do not authorize the present action.

Is the issue res judicata?

The doctrine of res judicata is widely recognized and is one of public policy and can be oppressive in a particular case, but is deemed to be so necessary and beneficial generally as to call for a complete disregard of those comparatively few instances in which its application would appear penalizing. The Supreme Court of Ohio in **Wright v. Schick, 134 Ohio St., 193, 12 O. O. 6,** adopted the usual definition of it as follows: Page 198—

"Briefly stated, the doctrine of res judicata is that an existing final judgment or decree, rendered upon the merits, and without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, question, and facts in issue, as to the parties or their privies, in all other actions or suits in the same or any other judicial tribunal of concurrent jurisdiction."

The above is a general, over-all definition and it will be noted that a judgment, to be final, must be "without fraud or collusion." That expression is true within certain very narrow limits and is not applicable in cases such as this. It is applicable only in those cases in which the fraud is such as to deprive or divest the court of jurisdiction. In such cases the judgment, on perfectly apparent grounds, is void. In all other cases it is merely voidable.

49 C. J. Secundum 859. Sec. 434:

"Where the fraud alleged was inherent in the cause of action, or in the character or procurement of the instrument sued on, it does not furnish a legitimate ground for impeaching the judgment in a collateral proceeding; and there are many decisions stating the broad general rule that, where the court has jurisdiction, it is not permissible for a party or privy to attack a judgment in a collateral proceeding because of fraud, such a judgment being voidable only, and not void."

If plaintiff in the instant case can proceed to trial at all she will, and must, proceed on the sole ground and theory that the testimony offered by plaintiff (defendant here) in the justice court was false and perjured.

49 C. J. S. 861 Par. No. 434c:

"It is no ground for impeaching a judgment collaterally that the testimony on which it was based was false or perjured unless the fraud goes to the jurisdiction of the court."

Freeman on Judgments, Vol. 2, 5th Edition, Sec. 731, page 1544. The section deals with "Fraudulent or Collusive Judgment." At page 1546 it is said:

"Nevertheless it must be borne in mind that so far as the parties and their privies are concerned, a domestic judgment cannot be collaterally impeached for fraud not going to the jurisdiction, but relief on this ground must be obtained in some direct proceeding by motion or suit in equity except in those jurisdictions where fraud or mistake may excuse the splitting of a cause of action. And the fact that a judgment was by consent or confession or was the result of a friendly suit or a default, does not defeat its operation as res judicata."

**Haynes v. United Ins. Co., 48 Oh Ap 475:**

Syll. 2. "The ground for vacation of a judgment that was secured by perjured testimony is not available until after conviction of the witness against whom the charge of perjury is made."

Syll. 3. "If fraud is relied upon to vacate a judgment it must be predicated on acts outside of, collateral and extrinsic to, the matter concerning which the judgment or decree was rendered."

The Court, at page 481 said:

"As to the claim that the judgment was secured by perjured testimony, this ground for vacation is not available until after conviction of the witness against whom the charge of perjury is made. **Mason v. Tremayne, 115 Oh St, 398.** If fraud is relied upon it must be predicated upon acts outside of, collateral and extrinsic to, the matter actually tried by the first court, and not related to the matter concerning which the judgment or decree was rendered. **Michael v. Am. Nat. Bank, 84 Oh St, 370. Minetti v. Einhorn, 36 Oh Ap, 310.**

**Michael v. Am. Nat. Bank, 84 Oh St, 370:**

Syll. 2. "The fraud or undue advantage for which a court of equity will set aside a judgment or decree must consist of extrinsic acts outside of and collateral to the matter actually tried by the first court and not related to the matter concerning which the judgment or decree was rendered."

At page 384 the court said:

"The mischief of endless litigation in which nothing is finally determined, is a thing more to be dreaded than an occasional miscarriage of justice. If by allegation in a bill in equity, that false testimony had been given, or forged documents introduced or new evidence discovered, controversies which had been regularly adjudicated could be opened up, there could be no assurance of the conclusive effect of final judgments."

The cases just cited were those in which a direct attack was being made and the courts held that such direct attack, if to be successful, must be on grounds of extrinsic rather than intrinsic fraud. If that is true in those cases it must be doubly true in an effort to launch a collateral attack. It is urged upon the Court that the case at bar does not constitute a collateral attack on the original judgment in the eviction case. With this claim the Court cannot agree.

The question of whether or not the plaintiff in the eviction proceeding (defendant here) did, at the time of that trial, in good faith need the premises for her own and family occupation was the sole issue in the justice court. It was decided in favor of plaintiff there. That court had jurisdiction to fully

determine that issue, and, there having been no appeal therefrom, this court is now bound by that judgment. The order made stands as a valid order. The question that was there involved is the foundation of this action. To say that the methods used—lack of good faith or perjury—is the question here is simply an evasion of the real issue. Whatever they were, they became a part of a judgment that is in effect and binding on the parties.

It will not be claimed that relief can be secured here without directly disproving what was proven in the court of the justice of. the peace. If the order of the justice stands as a valid order there can be no action based upon execution of it or upon its effect.

It is argued—and some courts have dwelt upon it—that "good faith" is an intangible and that it is difficult, if not indeed impossible, to disprove it before the original court and prior to the eviction. That may be true, but, as a practical matter, it is just as intangible after eviction as it was before, and, in any event, the situation is one created by Congress with full notice of its effect and without providing a remedy for any evil resulting from it. It is proper to note that a remedy was provided for rent overcharge—triple damage. It is not the function of a trial court to create a remedy in such situations and it is worthy of note that the Legislatures of some States have enacted legislation to grant a remedy in cases in which it can be shown that the eviction under Rent Control Law was not in good faith.

The Congress, Senate and House, had this precise question presented on debate, but the Congress was not then strengthening the Rent Control law but was weakening it—almost killing it. 93 Cong. Record, 7162. Discussion of provisions of the Act in the House. After reciting several of his objections to the Act, Mr. Spence came to the causes for eviction as they now appear in the Act, and said:

"What are the causes for eviction under this law? The causes for eviction are all of the causes now prescribed in the State laws where the action may be brought. In addition to these causes for eviction, it is provided by this act that if the tenant uses the property for immoral or illegal purposes, or if he commits a nuisance, they shall be causes for eviction and they are perfectly legitimate causes for eviction. * * * In addition to that, if the landlord in good faith wants to obtain the property ·for his own use * * * he can obtain possession of the property, and all of these are causes of eviction. Now, good faith is an intangible thing. How are you going to search the conscience of a landlord to ascertain

whether or not he in good faith wants it for his own purposes? He may in good faith evict the tenant and after he gets possession of the property he may see some objection to using it for his own purposes. There is no penalty against him for that, but he does get the tenant out. * * *"

93 Cong. Record 7297 (Senate). Discussion in U. S. Senate on "Extension of Rent Control—Conference Report." Discussion of June 19, 1947 on Act in question in this cause.

Sen. Taylor, page 7300:

"The eviction provisions have been changed so that a tenant can be gotten rid of for any number of reasons, five or six of them. For example, if he is a nuisance; if he is using the place for immoral purposes, or if the owner decides he wants to move into the house, he can kick out the tenant. But there is nothing in the bill which provides that the owner must move in. If he does not move in, there is no penalty attached to it. * * *"

The conference report was agreed to.

The President, when signing the Act, Doc. 370, 80th Cong., 1st Session 1947, expressed himself on that feature,—among other things he said:

"The act also weakens the protection against eviction, which is necessary for effective rent control, and completely removes the protection of rent control in many cases where it is still badly needed. * * *"

47 Columbia Law Review, 1118 (1154). Article on "The Federal Housing and Rent Act of 1947," by John W. Willis. At page 1154 the author says:

"The Act is completely lacking in sanctions so far as its eviction provisions are concerned. If the landord evicts the tenant on the ground of "self-occupancy" or occupancy by a purchaser or alteration and remodeling, and then fails to go through with his plans, the tenant has no remedy under the Act. The Emergency Price Control Act was not strong on this point; it gave the injured tenant no civil remedy; but eviction on false grounds was a violation of a regulation issued under that Act, and hence made the landlord liable to criminal sanctions, and the Price Administrator could, and did, resort to the injunctive process to restrain unlawful evictions, uninhibited by the usual restrictions on enjoining state courts. The present Act, as has been noted provides no criminal penalties, indeed does not even declare "unlawful" an eviction not in accordance with its terms as it does the demanding of an excessive rent; and the injunction provisions expressly apply only to cases involving excessive rents."

Under previous Acts (Price Control Act and 1942 Rent Control Act) there were steps to be taken by landlord which are not required at all. Under the Price Control Act the administrative agency controlled the situation and could apply penalties. Under the 1942 Rent Control Act the landlord had to secure from the Agency a certificate before he could proceed to a court action. These were protective of the tenant's rights but were completely removed by the 1947 Rent Control Act. (47 Columbia Law Review 1152—Remedies and Sanctions.)

62 Harvard Law Review, 153. "Recent Statute."

This article deals with remedial statutes enacted to meet the situation before us. (New York and Massachusetts) and, at Page 154, it is said:

"Moreover, res judicata is not the only obstacle to recovery. A necessary element of a deceit action by the tenant is proof of reliance on the representations of the landlord. Although he wholly disbelieves a landlord, a tenant is still compelled to move if he loses the eviction case. It would seem, therefore, that the tenant actually vacates not in reliance on the truth of any representations by the landlord, but rather as a result of judicial or administrative proceedings. Nor would any false testimony by the landlord in such proceedings give rise to a civil cause of action for fraud or perjury. * * * Since the federal housing legislation does not provide any relief * * * the instant State statutes are necessary for adequate protection of tenants. The Massachusetts statute imposes a criminal penalty on the landlord but does not provide for compensation to the tenant for his damages. * * *

"The New York legislation, by allowing the tenant to recover his damages for removal without establishing bad faith of the landlord in the original eviction litigation, has eliminated the common law problems of res judicata and reliance."

For a discussion and clear statement of the principle involved re fraud and perjury, see 31 Maine 435, Dunlap v. Glidden. This is an old case (1850) but the principles are discussed and the discussion is helpful.

Courts of last resort in several jurisdictions have had before them the precise question here to be decided, and have issued pronouncements from which one must take his choice. The Court of Appeals of Montgomery County, Ohio, decided a case in 1946 under the Rent Control Act of 1942.

Jackson v. Richards, 70 N. E. (2) 692. Under that Act a certificate was required from the O. P. A. Area Rent Director. The Court of Appeals held such certificate to be conclusive on the subject of its content and that a trial court in an evic-

tion action must accept it as conclusive. If the finding of an administrative officer is binding a fortiori is the finding of a court binding?

In the interest of brevity we refrain from quoting from that decision. However, we urge perusal of it. See also **Wright v. Schick, 134 Oh St, 193, 12 O. O. 6, (Syll. 3) supra.**

Rabe v. Thrasher, 197 S. W. (2d) 1. (Court of Appeals of Tennessee.) Decided 1946 under 1942 Act.

Syll. 1. "The defense raised by tenant in unlawful detainer action that the deed executed to plaintiff by her mother was not made in good faith, but a subterfuge to enable her to evict tenant, was foreclosed by action of the O. P. A. rent director in issuing certificate of authority to institute the proceedings, which certificate could only be attacked in the Emergency Court of Appeals."

David v. Flayman, 298 N. Y. Rep. 669 (1948). This was a damage action originally tried in the Supreme Court and in which trial the plaintiff prevailed. Trial court was reversed by the Appellate Division (273 App. Div. 408) and the decision of the Appellate Division was affirmed. The action was one for recovery of damages for fraud and deceit, and conspiracy to defraud. Plaintiff had been a tenant .(home) of the defendant and was evicted—

"upon a representation that defendant required possession solely for occupancy by himself and his family."

Plaintiff alleged that said representation was knowingly and falsely made in bad faith in that defendant did not intend to obtain possession for himself and family but for another who entered into possession when plaintiff vacated.

Appellate Division held that plaintiff could not collaterally attack the proceedings in the lower court since the fraud was instrinsic and related to the very issues which were or might have been litigated before the O. P. A., and before the lower court. There was another element in the proceeding. The court (N.Y.) held that there was no legislative sanction for the action at the time of its commencement.

This Court has been informed that since the adjudication in the above cause the Legislature of the State of New York has enacted a statute authorizing actions for damages in such cases and that some other states have such statutes but not Ohio.

Rosenbluth v. Sackadorf, 298 N. Y. Rep. 761. This was a case in which the same issue was raised, and in which the petition was dismissed on authority of David v. Flayman, supra.

Noyes v. Shanahan, 91 N. E. (2) 841, (Supreme Court of Massachusetts, 1950)—Action for damages on two grounds

(1) Illegal Eviction (2) Abuse of Process. The first is on all fours with the case at bar. The court dismissed that action on the opening statements:

Syll. 2. "Where former tenant offered to prove that landlord had acquired title to premises and had obtained certificate of eviction under federal rent regulations for housing permitting landlord to recover possession in good faith for his own immediate occupancy, and offered to show that landlord had succeeded in summary process action but had thereafter failed to take possession, tenant could not recover damages on theory of tortious eviction."

Syll. 3. "In order that there be a cause of action for abuse of process, it must appear that process was used to accomplish some ulterior purpose for which it was not designed or intended or which was not the legitimate purpose of the particular process employed."

Holding that the plaintiff had not stated a cause of action the court said—page 843:

"The great and insuperable difficulty with the plaintiff's case is that it is an attempt to go behind the judgment in the summary process action and to rest a new case upon issues which must necessarily have been decided heretofore against the plaintiff. * * * Whatever view is taken of the effect of the certificate, the plaintiff in this case who relies solely upon alleged bad faith of the defendant in prosecuting the summary process action, in which the defendant was successful, is in no position to show such bad faith."

Similar cases are cited: 324 Mass. 321; 324 Mass. 390, in which plaintiffs failed for the same reason.

The Court deems it fair to refer very briefly to the authorities cited in their brief by able counsel for the plaintiff in this cause.

Murphy v. O'Toole, 76 Atl. (2) 313 (Superior Court of Delaware). This is not a case decided by a court of last resort but it does squarely hold that an action for fraud and deceit in a case such as the instant case may be maintained.

**Price v. Insande, 20 Oh Ap 19:**

Syllabus: "A judgment in favor of a landlord, in an action in forcible entry and detainer, under which a writ of restitution is issued and the tenant evicted from the property, is not a bar for damages by the tenant against the landlord for a **breach of contract.** (Emphasis ours.)

This is a case which is a perfect example of the purpose of §10450 GC. The court said, at Page 22:

"By the special provisions of the statutes of this state, a judgment rendered in forcible entry and detainer before a

J. P., or in the Court of Common Pleas, is not a bar to a later action brought by either the landlord or the tenant. (Sec. 10450 GC.) This statute is an exception to the general rule relative to res judicata and leaves open for further consideration in a proper court disputes between the parties **growing out of the same subject matter,** * * *." (Emphasis ours.) The court did not have before it the question involved in the instant cause at all.

19 O. Jur. 175 (Brief quotes the following):

"The action for the forcible entry and detention, or the forcible or unlawful detention only, of property may be defined as a summary civil remedy provided by statute in certain cases, **intended to affect only the question of possession of real property.** (Emphasis ours.)

The statement again discloses the reason for §10450 GC.

Spillner v. Guenther, 58 Atl. (2) 540. (Supreme Court of New Jersey, Hudson County. Brown, Supreme Court Commissioner.) This case cannot possibly be authority to be followed in the case at bar, for the simple reason that the court referred to the statute in New Jersey. New Jersey has a Landlord and Tenant Act, referred to in the syllabus and the opinion and such act provided that—

"Proceedings had by virtue of Section 2832-265 of this title shall not be appealed, nor removed by certiorari, but the landlord shall remain liable in an action at law for any unlawful proceedings under Sections 2:32-265, 2:32-277 of this title."

The court said at page 542:

"Evidently the Legislature, in providing for summary proceedings by a landlord to obtain the right to immediate possession of a property recognizes that the claim of the landlord might not have been justified, and consequently, the Legislature enacted that the landlord shall 'remain' liable in an action at law in the nature of a suit for trespass for any unlawful proceeding under the Act."

Lyster v. Berberich, 65 Atl. (2) 632; Williams v. DeFabio, 65 Atl. (2) 858; Hirschberg v. Golattly, 76 Atl. (2) 912.

These cases are New Jersey cases. The legislature of New Jersey had provided a remedy for a tenant evicted without cause. While the remedy was probably provided without reference to the federal rent control provisions it nevertheless established a right and a public policy. The dispossession was under the state law.

Alabiso v. Schuster, 273 N. Y., App. Div., 655:

This was an action under the Control Act of 1942, and under that Act it was necessary for a landlord to secure a

certificate from the O. P. A., before he could institute his proceedings to dispossess. Such a certificate was secured and the court held that such certificate if secured on false statements would constitute extrinsic as distinguished from intrinsic fraud. In other words it was not part of the trial, it was secured before the trial, and it was binding on the court so that there was no judicial inquiry by any court into the good faith, motives or plans of the landlord. Syllabus 4:

"The fraud complained of is extrinsic, not intrinsic, and the fact that the certificate is final unless attacked under the Price Control law does not bar a common law action for fraud and deceit, the issuance of the certificate being only a step in the fraud. The tenant does not seek to set the certificate aside, but instead recognizes its finality."

The court said at page 658:

"Most of the cases involving the question as to whether fraud is extrinsic or intrinsic have arisen on proceedings to vacate or set aside judgments. It was said in United States v. Throckmorton, 98 U. S., 61, 66. 'In all these cases and many others which have been examined, relief has been granted, on the ground that, by some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court.' A good illustration of this rule is found in El Reno Mutual Fire Ins. Co. v. Sutton (41 Okla. 297). In this case, of course, there is no judgment but simply a certificate of the rent director moving the prayer to eviction proceedings. * * * The fraud is essentially in the deceitful method employed to obtain the certificate and in its use."

Nyullais v. Mozer, 193 Pac. 2 (Superior Court of Los Angeles County, California on Appeal from Muni. Ct. of Los Angeles.). Again we have a case based upon the O. P. A. certificate, and again we have a remedy under the statute—Section 1709 of the Civil Code of California. It is quoted on page 168:

"One who wilfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.

"Section 1710, Civil Code, says that—'A deceit, within the meaning of the last section is either: 1. The suggestion, as a fact, of that which is not true by one who does not believe it to be true; * * *'."

Teare v. Sussman, 210 Pac. (2) 446. (Supreme Court of Colorado.) In this case there was no court proceeding of any kind, therefore the question involved in the case at bar was not present at all. The question involved could not be res judicata when it had never been filed or heard in any court.

Trepanier v. Hujher et al., 134 Conn. 25 (54 Atl. [2] 275). This was an action for unlawful eviction on ground of fraud, and without fraud combined in one count, and no question such as those presented by the case at bar were raised or even considered. It apparently was assumed that there was a right to recover and such has been the situation in a number of cases in Ohio. The question now before this court has not been raised and some courts have rendered judgments upon the assumption that there was a right to recover if it was shown that the eviction had been made for a purpose not supported by good faith.

Tranchina v. Arcinas, 178 Pac. (2) 65. (California District Court of Appeals.) Again we find a case under the 1942 rent control law. Syllabus 4:

"Where defendants acting in bad faith procure certificate from O. P. A., permitting eviction of plaintiffs and obtaining judgment in unlawful detainer action for an ulterior purpose in circumvention of wartime regulations of Congress, and not for the purpose of occupying premises themselves, the perversion of writ of possession to purposes forbidden by law amounted to an actionable abuse of process of court. The fact that defendants had obtained O. P. A. certificate and unlawful detainer judgment did not bar plaintiffs from relief under res judicata doctrine.

Bille v. Manning, 210 Pac. (2) 254. (California.) Again we have a case in which the question in the case at bar was not even raised. The entire issue was that of nature of damages, general and punitive.

The case at bar is brought under the provisions of the Act of 1947. This act did not require any certificate of the O. P. A., as a prelude to institution of action to evict. There was, therefore, no adjudication by any bureaucrat of anything, and the entire adjudication was by the court so that the doctrine of res judicata is to be considered in an entirely different sense to consideration of it under the 1942 Act. Under the 1942 Act the decision of the O. P. A. in issuing the certificate was binding on the court but the O. P. A., was authorized to impose penalties for improper eviction. It was the intention of Congress by the 1947 Act to weaken in every possible respect the protections to the tenant under the 1942 Act. The Congress was very much inclined to entirely abolish the Rent Control provisions in 1947 and the weak 1947 Act was passed only because the Congress could not quite bring itself to repealing the entire Rent Control Act.

The court's attention has been called to two cases decided by the Court of Appeals of Cuyahoga County, but they are

not helpful at all. The first is cause No. 22045 in said court, Heck v. Hlavin. It was a case which developed from a claim of overcharge of rent. The court would naturally have jurisdiction to determine that question for the simple reason that the act of Congress itself provides the remedy, to-wit—triple damages. The real difficulty of the plaintiff in the case at bar is that the Congress provided a means of evicting her without furnishing to her a remedy if she was evicted without just cause by those means. The State Legislature in Ohio has likewise failed to enact legislation giving her a remedy in such case.

The second case is No. 21214 Miller v. Moss, and while we do not have the complete record before us, it is quite clear that the question in issue here was not in issue there. Brief of counsel for the appellee, page 5, sets forth the issues presented as follows:

"E. The issues Presented

"The ultimate issues presented by the appellant (Appellant's Brief, pp. 5, 10, 11) are:

"(1) Whether or not the finding of fraud by the Municipal Court of Cleveland is supported by the evidence or contrary to the manifest weight of the evidence.

"(2) Whether or not the action of the president and sole stockholder of a corporation can be imputed to the corporation itself so as to impose liability upon such corporation for the acts of such officer.

"(3) Whether or not the fraud established by the evidence in the present case is sufficient to justify the award of punitive or exemplary damages."

In the case at bar there was but one issue in the court of the Justice of the Peace:—Did the landlady in good faith want the premises for her own occupancy? No administrative officer had decided anything pertaining to that issue or any other in fact, and the issue was squarely before the court and it was the duty of the court to inquire into it, which it undoubtedly did. It resolved that issue in favor of the plaintiff in the justice court,—defendant here.

As between the parties that issue until reversed is wholly binding and is res judicata and is also binding on this court for the simple reason that the justice court was vested with jurisdiction to determine that issue. If this cause is tried in this court it will have to be on the basis of a brand new inquiry between the same parties into the truth or falsity of the facts in issue in the justice court.

On the basis of principles enunciated from time to time by the Supreme Court of Ohio, and especially on the basis

of the pronouncement of the courts of last resort in the State of Massachusetts and of New York, in cases on all fours with the one at bar, the court is led to the conclusion that the plaintiff in this cause cannot recover and an order will be made granting the motion of the defendant for judgment.

The Court deems it proper to mention that it is very doubtful if the Amended Petition in this cause states a cause of action in any event. The only attempt made to state a cause is the following, on page 2:

"Plaintiff further says that the defendant, Mae A. Webb, by procuring the assistance of the court in evicting the plaintiff on the ground that the defendant needed the premises for her "immediate and compelling" use and then never occupying said premises either for herself or her immediate family, committed a fraud both upon this plaintiff and the court."

It is nothing beyond a mere conclusion to say that procuring the assistance of a court to evict on a certain ground and to fail, later, to carry out the stated purpose, is a fraud. The court merely mentions this matter so that the plaintiff may be on guard in case this cause is finally called for trial in this court.