Argued May 31; affirmed September 11, 1945

# FEHL *v.* JACKSON COUNTY

(161 P. (2d) 782)

Before BELT, Chief Justice, and ROSSMAN, KELLY, BAILEY, LUSK, BRAND and HAY, Associate Justices.

*Roy R. Hewitt,* of Salem, for appellant.

*George W. Neilson,* of Medford (Allison Moulton, of Medford, on the brief), for respondent.

ROSSMAN, J.

This is an appeal by the plaintiff from a judgment of the circuit court entered in favor of the defendant after a demurrer had been overruled to the answer and the plaintiff had declined to plead further. According to an unchallenged recital of the judgment, the parties stipulated that "the issues herein could be determined on demurrer to the answer."

The complaint alleges that November 8, 1932, the plaintiff was elected judge of the County Court for Jackson County for a six-year term beginning January 1, 1933; he qualified for the office; January 1, 1933, "he assumed said office and became entitled to hold the same and to receive the emoluments to and including" January 2, 1939; in that period the salary of his office was $2,000 per year; and "no part of the emoluments of said office, the sum of $12,000, has been paid save and except the sum of $1,000." Judgment was demanded for $11,000, together with interest.

The answer admits that the salary of the judge of the County Court for Jackson County during the period mentioned in the complaint was $2,000 per year; that the plaintiff was elected to that office for a term beginning January 1, 1933; and that upon that day he as-

sumed the office. All other averments of the complaint are denied. The answer submits four affirmative defenses.

The first defense alleges that February 20, 1933, the vault in the Jackson County courthouse containing ballots cast in the election of November 8, 1932, was forcibly entered and ballots were unlawfully removed; March 15, 1933, the plaintiff, Fehl, and others were indicted by the Jackson County grand jury and charged with burglary not in a dwelling, based upon the felonious taking of the ballots; later the venue was changed to Klamath County; July 24, 1933, the cause came on for trial in the Circuit Court for Klamath County; August 4, 1933, Mr. Fehl "was convicted in the said court of the crime of Burglary Not in a Dwelling"; August 7, 1933, he was sentenced to a term of not to exceed four years in the state penitentiary; August 14, 1933, he signed a "waiver wherein and whereby he waived all of his rights to appeal to the Supreme Court of the State of Oregon in the said criminal action or to demand a retrial of said cause and did request that he be removed from the Klamath County jail in Klamath County, Oregon, to the Oregon State Penitentiary at Salem, Oregon, in order to commence serving said sentence"; and, pursuant to the judgment, Fehl was incarcerated in the Oregon penitentiary until his sentence was served. Continuing, the answer alleges that August 7, 1933, the Honorable Julius L. Meier, Governor of this State, appointed Mr. Earl B. Day county judge of Jackson County for the remainder of the term for which Mr. Fehl had been elected. These averments further state that November 6, 1937, a complaint was filed in the County Court for Jackson County which alleged that Mr. Fehl was insane and unsafe to be at large; later the cause came on for a hearing; December

20, 1937, the court adjudged Mr. Fehl insane and committed him to the Oregon State Hospital; the adjudication of insanity was appealed to this court where it was affirmed July 12, 1938 (*In re Fehl,* 159 Or. 545, 81 P. (2d) 130); and the plaintiff remained a patient in the state hospital until June 17, 1941.

Other parts of this defense state that the aforementioned judgment of conviction suspended the plaintiff's civil rights and forfeited his right to the office of judge of the county court. They also allege that the aforementioned Earl B. Day was entitled to and was paid the salary of judge of the county court for Jackson County from the time of his appointment to that office until the close of the term.

The second, third and fourth affirmative defenses, we shall epitomize very briefly. The one alleges that Roy M. Parr recovered a judgment against Fehl in the sum of $15,000 on March 8, 1932, in the Circuit Court for Jackson County, and that later writs of execution were issued upon the judgment, followed by notices of garnishment which were served upon the county clerk of Jackson County. The third alleges that in the aforementioned criminal action the circuit court awarded the defendant in this case judgment against Fehl in the sum of $3,962.35 (see *State v. Fehl,* 152 Or. 104, 52 P. (2d) 1118) and that only $3,246.10 has been paid upon the judgment. The fourth pleads the statute of limitations.

■ The demurrer filed by the plaintiff was predicated upon a contention that the averments of the answer submitted no defense to the complaint. Under the circumstances, the circuit court was required to believe, and we are likewise obliged to believe, that the averments of the answer state the trust.

Article VII, § 6, Constitution of Oregon, says:

"Public officers shall not be impeached; but incompetency, corruption, malfeasance, or delinquency in office may be tried in the same manner as criminal offenses, and judgment may be given of dismissal from office, and such further punishment as may have been prescribed by law."

Article II, § 3, states in part:

"The privilege of an elector shall be forfeited by a conviction of any crime which is punishable by imprisonment in the penitentiary."

■ Section 81-2003, O. C. L. A., says:

"Every office shall become vacant on the occurring of either of the following events before the expiration of the term of such office:

(1) The death of the incumbent.
(2) His resignation.
(3) His removal.

* * *

(5) His conviction of any infamous crime, or of any offense involving a violation of his oath.

* * *"

The crime of which this plaintiff was convicted was burglary; we quote from § 23-513, O. C. L. A.:

"If any person * * * shall break and enter any building * * * in which any property is kept, with intent to steal therein, or to commit any felony therein, such person shall be deemed guilty of burglary, and upon conviction thereof shall be punished by imprisonment in the penitentiary not less than two nor more than five years."

Burglary is an infamous crime: *United States v. Moreland,* 258 U. S. 433, 66 L. Ed. 700, 42 S. Ct. 368, 24 A. L. R. 992; and see p. 1002 of the annotation in the volume last cited. See also 12 C. J. S., Burglary,

p. 664, § 1 (b); 14 Am. Jur., Criminal Law, 755, § 4; Bouvier's Law Dictionary (Rawle's 3rd Rev.) 1553; and 21 Words and Phrases (Perm. Ed.) 251, 252.

Section 23-1406, O. C. L. A., reads:

"A judgment of imprisonment in the penitentiary for any term less than for life suspends all the civil rights of the person so sentenced, and forfeits all public offices and all private trusts, authority, or power during the term or duration of such imprisonment."

Section 23-101, in keeping with the paragraph just quoted, defines a crime as:

"An act or omission forbidden by law, and punishable upon conviction by either of the following punishments:

(1) Death;

(2) Imprisonment;

(3) Fine;

(4) Removal from office;

(5) Disqualification to hold and enjoy any office of honor, trust, or profit under the constitution or laws of this state."

The two sections of our laws last quoted were enacted in 1864 as parts of the penal code. Their purposes are penal.

■ Section 81-2003 was paragraph 42 of an act adopted in 1870, which consisted of eight chapters divided into forty-eight paragraphs. The 1870 act pertained to the public office of this state. Some of its provisions specified the needed qualifications of voters, others provided for general elections and some others set forth the procedure governing election contests.

Still other parts regulated such matters as resignations from public office, vacancies in office and the appointment of someone to a vacant office. Section 81-2003, O. C. L. A., as paragraph 42 of the act, was a part of the seventh chapter which bore the head Of Vacancies. Manifestly, the 1870 act was not penal in nature. Its purpose was the proper administration of the public business. The authors of the act did not believe that the public business should be transacted by any official against whom a judgment was entered during his term of office, which found him guilty of an infamous crime. Therefore, the act directed that the entry of such a judgment should vacate the office of the felonious official. In order to assure a continuity in the public administration another paragraph of the act made provision for the appointment of a successor of the dismissed official. Since removal can not occur until a judgment of guilt has been entered against the offending official, he is assured of a day in court and of the due process of the law. The purpose of § 81-2003 is not to invoke a forfeiture, but to dismiss for cause any official subject to that section of our laws who is convicted of an infamous crime while holding public office. When he accepted his office he was charged with notice of the provisions of § 81-2003, and thereby knew that his term would end upon the occurrence of any of the enumerated events. Article VII, § 6, of our Constitution, previously quoted, authorized the enactment of legislation for the removal from office of officials who bear the stigma of infamy.

It is true that some legislation requires the institution in the courts of a proceeding for the dismissal from his office of an official who has breached the laws which govern tenure of office. See 43 Am. Jur., Public

Officers, §§ 225 to 235. But § 81-2003, it will be recalled, says:

> "Every office shall become vacant on the occurring of either of the following events before the expiration of the term of such office:
>
> \*   \*   \*
>
> (5) His conviction of any infamous crime, \*   \*   \*."

That language does not postpone the vacation of the office until after a suit, instituted for the official's dismissal, has terminated in a decree calling for his expulsion. To the contrary, it says that the "event" of his conviction shall render his office vacant. The very nature of some of the "events" enumerated in § 81-2003, such as death and resignation, shows that no removal suit was contemplated by the authors of the act and that none is necessary.

Other courts which have construed legislation similar to § 81-2003 held that no removal suit is necessary to terminate the official's term when one of the enumerated events has occurred. They hold that the event automatically ends the term. For instance, in *State ex rel. Anderson v. Fousek,* 91 Mont. 448, 8 P. (2d) 791, 84 A. L. R. 303, a statute (§ 511 Rev. Codes 1921 of Montana) read:

> "An office becomes vacant on the happening of either of the following events before the expiration of the term of the incumbent:
>
> \*   \*   \*
>
> 8. His conviction of a felony, or of any offense involving moral turpitude, or of a violation of his official duties."

The relator, a lieutenant in the police department of the city of Great Falls, was convicted in a federal

court of a violation of a Congressional statute which prohibited conspiracies to commit offenses against the United States. The Montana court, in the cited decision, said:

"The crime for which relator stands convicted is a felony in the jurisdiction where committed, and we cannot regard it otherwise. Under the plain provision of section 511 the office of relator became vacant upon his conviction. * * * The action of the mayor in permanently discharging relator was also unnecessary to his effective removal. By force of the statute, his office became vacant upon his conviction of the felony."

In *People ex rel. Fleming v. Shorb,* 100 Cal. 537, 35 P. 163, 38 Am. St. Rep. 310, a statute read:

"Sec. 996. An office becomes vacant on the happening of either of the following events before the expiration of the term * * *.

6. His absence from the state without permission of the legislature beyond the period allowed by law; * * *."

Another statute said that no county officer should absent himself from the state for a period of more than sixty days, and for no period whatever without the consent of the board of supervisors.

The defendant, Shorb, was elected in November, 1892, treasurer of Los Angeles County, and July 14, 1893, left the state. September 15 the board of supervisors appointed the relator, T. J. Fleming, county treasurer. September 25 Shorb was still absent from the county and the proceeding under review, in the nature of quo warranto, was instituted. The decision held:

"The ten events mentioned in section 996 are merely conditions, upon the occurrence of any one of which the legislature has declared the office shall

become vacant, not as a penalty or forfeiture, but simply as the legal effect of the happening of any one of the events mentioned, * * * The absence of Shorb from the state as alleged and admitted, ipso facto, effected a vacancy of the office of treasurer."

For a citation to other decisions which held to like effect, see 42 Am. Jur., Public Officers, § 132.

Some Oregon statutes protect the incumbent from dismissal until a proceeding for removal has been filed and prosecuted successfully. An example is § 13-702 which says that "the making and filing of a false certificate" by a circuit court judge that he has disposed of all matters pending for three months or longer "shall be deemed just cause for complaint to the legislature and removal of said judge." Still another example is § 47-501 which sets forth the basis upon which disbarment proceedings may be instituted. Some sections of our penal code authorize dismissal from office as a discretionary part of the penalty in the event a judgment of guilt is entered against a public official. See, for instance, §§ 23-613 and 23-632.

We are satisfied that § 81-2003 means that the event itself—in this instance conviction of an infamous crime—terminates the tenure of office and renders the latter vacant.

■ The plaintiff, however, contends that in Oregon the office of judge of a county court is a "constitutional salaried office" and that, since such is its status, it assures the "incumbent special immunity as regards salary and tenure." He freely concedes that he was adjudicated guilty of the crime of burglary and that later he was adjudged insane, but argues: "The cause for removal does not constitute a removal."

Upon the adoption of our Constitution in 1857, § 1, Art. VII, read as follows:

"The judicial power of the state shall be vested in a supreme court, circuit courts and county courts, which shall be courts of record, having general jurisdiction, to be defined, limited, and regulated by law, in accordance with this constitution. Justices of the peace may be &ast; &ast; &ast;."

In 1910 the people amended Article VII in its entirety. See 1911 General Laws of Oregon 7. Section 1 of the new article reads thus:

"The judicial power of the state shall be vested in one Supreme Court and in such other courts as may from time to time be created by law. The judges of the supreme and other courts shall be elected by the legal voters of the state or of their respective districts for a term of six years, and shall receive such compensation as may be provided by law. which compensation shall not be diminished during the term for which they are elected."

Section 2 follows:

"The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law. But the Supreme Court may, in its own discretion, take original jurisdiction in mandamus, quo warranto and habeas corpus proceedings."

Article VII, written in 1857, was repealed and supplanted by the 1910 amendment: *Starr v. Laundry Union*, 155 Or. 634. 63 P. (2d) 1104, and *Webster v. Boyer*, 81 Or. 485, 159 P. 1166, Ann. Cas. 1918D, 988. The county court is no longer a constitutional court: *In re Will of Pittock*, 102 Or. 159, 199 P. 633, 202 P. 216, 17 A. L. R. 218; *Astoria v. Cornelius*, 119 Or. 264, 240 P. 233; *La Grande v. Municipal Court*, 120 Or. 109,

251 P. 308. Therefore, the plaintiff was not the incumbent of a so-called constitutional office. Nevertheless, the term of his office and the immunity of his salary from reduction during his term of office were protected by Article VII, § 1. However, there was applicable to him, as to all state officials, Article VII, § 6, which we have previously quoted and which permitted his term to be ended in the event of his misconduct. Such being our view, it is unnecessary for us to review herein *People v. Craig,* (Cal.) 61 P. (2d) 934; *State ex rel. Jones v. Tugwell,* 199 La. 12, 5 So. (2d) 368; *State v. Dearth,* 201, Ind. 1, 164 N. E. 489, which are cited by the plaintiff and which pertained to offices created by a constitution from which the incumbent was removed in contravention of constitutional safeguards. In reading *People v. Craig,* supra, one should not overlook *People v. Craig* (Cal.), 72 P. (2d) 135.

We are satisfied that § 81-2003, O. C. L. A., was applicable to the plaintiff, and that the entry of the judgment which held him guilty of the crime of burglary automatically vacated his office of judge of the County Court of Jackson County.

■ Again, § 90-211, O. C. L. A., declares:

"* * *; and provided further, that no public moneys of any name and nature whatsoever be paid out of any fund or funds of the state, except as herein provided, and that no claim be allowed and no warrant drawn until services have actually been rendered, * * *."

The office to which the plaintiff was elected was subject to that statute. His complaint does not allege that he rendered any service for which payment has not been made in full. The bare averment that he "assumed said

office'' does not suffice to show that the defendant became indebted to him; especially not when it stands admitted that during the period for which he seeks judgment he was incapable of discharging the duties of the office.

The judgment of the circuit court is affirmed.