Submitted on the briefs July 10, judgment to issue that respondent currently holds the office of Wasco County District Attorney September 24, 2020

STATE ex rel Ellen ROSENBLUM,
Attorney General of Oregon,
*Petitioner,*

*v.*

ERIC NISLEY,
*Respondent.*

(SC S067690)

473 P3d 46

The state, on behalf of the Attorney General, filed a petition for writ of *quo warranto*, asking this court to determine whether the office of Wasco County District Attorney became vacant when respondent, the office holder, was temporarily suspended from the practice of law for an ethics violation. *Held*: The brief interruption in respondent's ability to practice law did not cause him to "cease[] to possess" a qualification for the office of Wasco County District Attorney within the meaning of that phrase in the vacancy statute, ORS 236.010(1)(g); therefore, the office did not become vacant and respondent remains the rightful holder of that office until the expiration of his term of office.

Judgment to issue that respondent currently holds the office of Wasco County District Attorney.

En Banc

On petition for writ of *quo warranto.*

Paul L. Smith, Assistant Attorney General, Salem, submitted the brief for the petitioner. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Sharon A. Rudnick, Harrang Long Gary Rudnick PC, Eugene, submitted the brief for respondent. Also on the brief were William F. Gary, Eugene, and Susan D. Marmaduke, Portland.

FLYNN, J.

Judgment to issue that respondent currently holds the office of Wasco County District Attorney.

**FLYNN, J.**

This court has agreed to exercise its original jurisdiction in the nature of *quo warranto* to determine whether respondent, the lawyer who was elected to the office of Wasco County District Attorney in 2016, remains the lawful holder of that office. The dispute turns on whether a 60-day suspension from the practice of law caused respondent to "cease[] to possess" a qualification for holding office—thus creating a vacancy in the public office—as contemplated by ORS 236.010(1)(g). As we explain below, we conclude that respondent's brief suspension from the practice of law did not render the office of Wasco County District Attorney vacant.

## I.   FACTS AND PROCEDURAL BACKGROUND

The following facts are undisputed. Respondent was elected to the office of Wasco County District Attorney and began serving a four-year term in January 2017. After respondent's election, the Oregon State Bar charged him with several violations of the Oregon Rules of Professional Conduct. This court ultimately reviewed the case against respondent, concluded that he had committed some of the charged violations, and imposed the sanction of a 60-day suspension from the practice of law—a suspension of respondent's active membership in the Oregon State Bar— commencing in February 2020. *In re Nisley,* 365 Or 793, 818, 453 P3d 529 (2019).

Following that decision, the Attorney General's office advised the Governor that respondent's impending suspension would render the office of the Wasco County District Attorney vacant within the meaning of ORS 236.010(1)(g). In response, the Governor directed the Attorney General to "discharge the responsibilities of the Wasco County District Attorney," starting the first day of respondent's suspension and continuing until the Governor appointed "a successor or one is lawfully elected."[1]

---

[1] ORS 180.070 permits the Attorney General, when directed by the Governor, to take full charge of investigations and prosecutions over which the circuit court has jurisdiction.

Meanwhile, respondent's lawyer sent a letter urging the Attorney General to permit respondent to continue serving as District Attorney during the period of his suspension, but to limit him to handling only administrative matters until the suspension ended. Respondent pointed out that he was not the first district attorney to be suspended while in office and that, in earlier cases, no vacancy in the office of district attorney had been declared and the office holders simply had resumed all district attorney duties at the end of the suspension period. The Attorney General rejected respondent's proposal and advised him that the Attorney General's office would discharge the duties of the Wasco County District Attorney beginning on the date of his suspension, as directed by the Governor.

When respondent's suspension expired, he secured reinstatement to active membership in the Oregon State Bar on April 15, 2020, and he claims the right to complete his term as Wasco County District Attorney. The Attorney General, however, insists that respondent is no longer the lawful Wasco County District Attorney because the office became vacant—and will remain vacant until respondent's successor is appointed or elected.

In an attempt to resolve that dispute, the state filed a petition for a writ of *quo warranto* on behalf of the Attorney General, in which it asked this court to determine that respondent is not the lawful holder of the office of Wasco County District Attorney, because the office became vacant upon his suspension. Respondent agrees that this court should exercise its jurisdiction to resolve the dispute, but he disagrees with the Attorney General's conclusion that he is no longer the lawful office holder.

## II.   ANALYSIS

### A.   *The Nature of this Court's Jurisdiction*

We begin by briefly describing the unusual nature of the proceedings in this court. The Oregon Constitution grants this court original jurisdiction over *quo warranto* proceedings. Or Const, Art VII (Amended), § 2. That original jurisdiction continues despite the fact that the legislature long ago replaced the common-law writ of *quo warranto* with

a statutory process.[2] As ORS 34.810 specifies, "the writ of *quo warranto*, and proceedings by information in the nature of *quo warranto* are abolished," but it provides that the same remedies "heretofore obtainable under those forms may be obtained by action in the mode prescribed in ORS 30.510 to ORS 30.640." *See also State ex rel. Madden v. Crawford*, 207 Or 76, 80-81, 295 P2d 174 (1956) (explaining that the "enactment is the statutory equivalent of the common-law writ of *quo warranto*"). But we generally still refer to an action commenced under the statutory procedures "as a proceeding in *quo warranto*." *Id.* As relevant here, ORS 30.510(1) provides that an action may be maintained in the name of the state when a person "usurps, intrudes into, or unlawfully holds or exercises any public office." We have agreed to exercise our original jurisdiction in the nature of *quo warranto* to resolve whether respondent correctly claims to be the lawful holder of the office of Wasco County District Attorney.[3] We turn now to that question.

B.  *Whether the Office of Wasco County District Attorney is Vacant*

    As is evident from the Attorney General's position, the dispute at the heart of this case revolves around whether respondent, although now reinstated to the active practice of law, is disqualified from serving the remainder of his term of office. Both parties agree that the answer to that question turns on whether the office became "vacant"—within the meaning of ORS 236.010—at the onset of respondent's 60-day suspension. Further narrowing the inquiry, both parties agree that, of the vacancy-creating circumstances

---

[2] The writ of *quo warranto* has been abolished since at least 1854—before the adoption of the constitution. *See* Statutes of Oregon, An Act Regulating Proceedings to Vacate Charters and Letters Patent, and to Prevent the Usurpation of an Office or Franchise, ch I, § 1, p 139 (1854) ("That the *** writ of *quo warranto*, and proceedings by information in the nature of *quo warranto* are abolished, and the remedies heretofore obtainable under those forms may be obtained by actions at law under the provisions of this chapter.").

[3] Strictly speaking, the procedure specified in ORS 30.510 may not describe the petition that the Attorney General has filed here, because it is the Attorney General's designee—not respondent—who currently occupies the office of Wasco County District Attorney. But respondent maintains that he is the lawful holder of the office, and the Attorney General's challenge to that claim is substantively indistinguishable from the type of dispute that ORS 30.510(1) contemplates.

listed in ORS 236.010, the only potentially applicable circumstance is paragraph (1)(g) of that statute, which provides:

"(1)  An office shall become vacant before the expiration of the term if:

"* * * * *

"(g)  The incumbent ceases to possess any other qualification required for election or appointment to such office."

According to the Attorney General, active membership in the Oregon State Bar is a qualification for serving as a district attorney and, when respondent was suspended from practicing law, he "cease[d] to possess" a "qualification required for election or appointment" to the office of district attorney. Thus, the Attorney General contends, respondent's suspension triggered a vacancy by operation of law that the Governor is required to fill by appointment until the next election. *See Fehl v. Jackson County*, 177 Or 200, 211, 161 P2d 782 (1945) (construing the statutory predecessor to ORS 236.010 as identifying events that "automatically vacated" the office;[4] ORS 8.640 ("When a vacancy occurs in the office of district attorney, the Governor must appoint some suitable person to fill the vacancy until the next election[.]").

Respondent offers alternative reasons for concluding that the office of Wasco County District Attorney did not become vacant and that he, therefore, remains the lawful

---

[4] This court in *Fehl*, 177 Or at 211, considered section 81-2003 of the Oregon Compiled Laws Annotated, which provided:

"Every office shall become vacant on the occurring of either of the following events before the expiration of the term of such office:

"(1) The death of the incumbent.

"(2) His resignation.

"(3) His removal.

"(4) His ceasing to be an inhabitant of the district, county, city, town or village for which he shall have been elected or appointed, or within which the duties of his office are required to be discharged.

"(5) His conviction of any infamous crime, or of any offense involving a violation of his oath.

"(6) His refusal or neglect to take his oath of office, or to give or renew his official bond, or to deposit such oath or bond within the time prescribed by law.

"(7) The decision of a competent tribunal declaring void his election or appointment."

office holder. First, respondent contends that an active bar membership is not a qualification for continuing to serve as an elected district attorney. Alternatively, he contends that he did not "cease to possess" that qualification within the meaning of the vacancy statute when he was briefly suspended from practicing law. As explained below, we reject respondent's contention that maintaining an active bar membership is not a qualification for serving as district attorney, but we agree with respondent that he did not "cease[] to possess" that qualification under the circumstances of this case.

  1.  *The requirement of active membership in the Oregon State Bar*

  Both parties point to ORS 8.630 as the defining source of qualifications for serving as a district attorney in Oregon. That statute specifies:

  "A person elected district attorney must, at the time of election, have been admitted to practice in the Supreme Court of Oregon. District attorneys shall possess the qualifications, have the powers, perform the duties and be subject to the restrictions provided by the Constitution for prosecuting attorneys, and by the laws of this state."

ORS 8.630. Both parties focus primarily on the first sentence of that statute and offer competing grammatical analyses of whether the text refers to a continuing requirement that must have been met by the time of election or only to a requirement that must exist at the time of election. As with all matters of statutory construction, we turn to the framework that we first described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and modified in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). Under that framework, we give primary weight to the text and context of the pertinent statutes, because "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." *Gaines*, 346 Or at 171 (internal quotation marks omitted).

  The Attorney General understands the first sentence of ORS 8.630 to impose a continuing requirement of

"admi[ssion] to practice in the Supreme Court of Oregon," which district attorneys must possess as of the date of the election. The Attorney General points out that the requirement of "admi[ssion] to practice," in turn, requires active membership in the Oregon State Bar and that respondent lost that qualification during the period of his suspension. *See* ORS 9.160(1) ("[A] person may not practice law in this state *** unless the person is an active member of the Oregon State Bar."); *In re Jaffe*, 331 Or 398, 401, 15 P3d 533 (2000) (a person who has been suspended from the practice of law is not an active member of the Bar during the period of suspension). Therefore, the Attorney General concludes, respondent ceased to possess a qualification for the office of district attorney when he was suspended from the practice of law, which rendered the office vacant until a successor can be elected or appointed.

Respondent counters that the grammatical construction of the sentence refers to a circumstance—admission to practice—that must have occurred in the past and does not require district attorneys to maintain an active bar membership once elected to office. Thus, according to respondent, he meets that qualification because he "had been admitted" to the Oregon State Bar "at *the time of election*" in 2016 and did not lose that qualification when he was briefly suspended.

While respondent may be correct that the first sentence of ORS 8.630 is susceptible to the interpretation that he proposes, his argument misses the mark. His focus on the phrase "at the time of election" in the first sentence overlooks the broader context of ORS 8.630 as a whole— in particular the second sentence, which specifies that "[d]istrict attorneys shall possess the qualifications, have the powers, [and] perform the duties" specified for prosecuting attorneys "by the laws of this state." That sentence describes requirements that are not temporally limited to "the time of election." Moreover, the sentence directs us to look to the duties that the legislature has required district attorneys to perform, many of which require the practice of law in Oregon courts that can be performed only by active members of the Oregon State Bar. That context demonstrates the legislature's understanding and intention that

district attorneys must possess an active membership in the Oregon State Bar as a qualification for continuing to hold their office.

District attorneys in Oregon are state officers. *State v. Clark*, 291 Or 231, 245, 630 P2d 810, *cert den*, 454 US 1084 (1981). Those state officers previously were known as "prosecuting attorneys," who were "elected by districts." Their status was initially enshrined in the Oregon Constitution, which until 1910 provided—as ORS 8.630 now provides—that those state officials would "perform such duties * * * as the Legislative Assembly may direct." Oregon Constitution, Article VII (Original), section 17.[5] From the outset, the duties that the Legislative Assembly has specified for district attorneys have included numerous tasks that required the office holder to practice law in Oregon courts. For example, under current law, district attorneys "shall * * * conduct, on behalf of the state, all prosecutions" of "public offenses within the district attorney's county," ORS 8.660; "shall prosecute" all citations "if it appears that a violation has occurred," ORS 8.665; shall, in cases of penalties and forfeitures, "prosecute or defend all actions, suits and proceedings in the county to which the state is a party," ORS 8.680; and "shall, upon request of the juvenile court, appear in the juvenile court to assist the court in any matter within its jurisdiction," ORS 8.685. Some of the statutes currently specifying the duties of a district attorney are essentially identical to statutes that have been in effect since at least 1901. *See* The Codes and Statutes of Oregon, title XIV, ch I, § 992 (Bellinger & Cotton 1901) (district attorneys "shall * * * conduct, on behalf of the state, all prosecutions" of "public offenses within" the district); *id.*, § 994 (in cases of penalties and forfeitures, district attorneys shall "prosecute or defend, as the case may be,

---

[5]  The original Article VII of the Oregon Constitution, section 17, provided:

"There shall be elected by districts comprised of one, or more counties, a sufficient number of prosecuting Attorneys, who shall be the law officers of the State, and of the counties within their respective districts, and shall perform such duties pertaining to the administration of Law, and general police as the Legislative Assembly may direct."

Long before Oregon voters removed that constitutional provision, the legislature specified as a matter of statute that there would be an elected "district attorney" for each judicial district. The Codes and General Laws of Oregon, ch VII, title IV, § 2301 (Hill 1887).

all actions, suits, or proceedings in any county in his district to which the state or such county may be a party"). A common thread running through all of those duties is that they require the district attorney to practice law in Oregon. And since 1935, the qualification that a person must possess to practice law in Oregon has been active membership in the Oregon State Bar. ORS 9.160; Oregon Code (1930), Supplement of 1935, title XXXII, ch I, § 32-132.[6] Thus, when the legislature codified the current version of ORS 8.630—requiring that district attorneys must "possess the qualifications" and "perform the duties" provided by the laws of this state—it did so in the context of statutory duties that can only be performed by a person with an active membership in the Oregon State Bar.[7]

Respondent acknowledges that district attorneys are statutorily required to perform duties that require the ability to practice law, and he recognizes that active

---

[6] As originally adopted, the statutory requirement of state bar membership specified that:

"No person shall practice law in this state subsequent to December 31, 1935, unless he shall be an active member of the state bar[.]"

Oregon Code (1930), Supplement of 1935, title XXXII, ch I, § 32-132. The 1937 Legislative Assembly added the prohibition that those without an active bar membership also may not represent themselves as qualified to practice law in Oregon:

"[I]t shall be unlawful for any person to practice law or to represent himself as qualified to practice law after the taking effect of this act, unless he shall be an active member of the Oregon state bar[.]"

Or Laws 1937, ch 343, § 1.

[7] Apart from a few commas and the removal of gender-limiting pronouns, the current version of ORS 8.630 is identical to the statute that the legislature codified in the Oregon Revised Statutes in 1953:

"A person elected district attorney must at the time of his election have been admitted to practice in the Supreme Court of Oregon. District attorneys shall possess the qualifications, have the powers, perform the duties and be subject to the restrictions provided by the Constitution for prosecuting attorneys, and by the laws of this state."

ORS 8.630 (1953).

The second sentence of ORS 8.630 is virtually identical to a statute that the legislature enacted in 1913, which provided, that district attorneys:

"shall possess the same qualifications, have the same powers, perform the same duties and be subject to the same restrictions as are now provided by the constitution and laws of this State relating to prosecuting and District Attorneys."

General Laws of Oregon (1913), ch 343, § 4.

membership in the Oregon State Bar is required for the practice of law in this state "as a general matter." He nevertheless posits that the legislature may have intended to exempt district attorneys from that requirement as a "policy choice." According to respondent, "[t]he legislature might just as well have intended that a district attorney is authorized to appear in court without being an active member of the Oregon State Bar because he or she is the district attorney."

But statutory construction requires more than speculation, and the only support that respondent offers for his supposition is an inference from legislative inaction. Respondent contrasts the legislature's failure to expressly specify that district attorneys must maintain an active bar membership with later-enacted statutes in which the legislature has expressly specified that continuing bar membership is a requirement for holding certain offices of a judicial nature. *See* ORS 3.050 (requiring circuit court judges to be "a member of the Oregon State Bar," as amended in 1961, Or Laws 1961, ch 724, § 3); ORS 2.540(2) (requiring judges of the Court of Appeals "to be admitted to the practice of law in this state," adopted in 1969, Or Laws 1969, ch 198, § 4); ORS 51.240(1)(e)(A) (requiring justices of the peace to be "a member of the Oregon State Bar," as amended in 2015, Or Laws 2015, ch 570, § 6); ORS 221.142(1)(a) (requiring municipal court judges to be "a member of the Oregon State Bar," as amended in 2015, Or Laws 2015, ch 570, § 8). According to respondent, the legislature's failure to make a "corresponding change" to ORS 8.630 at any point since 1953 should be viewed as a "policy choice" that district attorneys need not maintain active bar membership after the time of election.

Respondent's negative-inference argument is unpersuasive. First, as we have repeatedly emphasized, "negative inferences" from the legislature's failure to amend a statute "are often unhelpful in statutory interpretation," because "legislative inaction can stem from a variety of causes, which may or may not relate to the legislature's intent as to a particular issue." *Lake Oswego Preservation Society v. City of Lake Oswego*, 360 Or 115, 129, 379 P3d 462 (2016). Moreover, the lack of an explicit amendment to the requirements for holding a district attorney office is irrelevant. Whether directly

through ORS 8.630 or indirectly through other statutes, the legislature *has* required active membership in the Oregon State Bar as a qualification for performing the duties that it requires district attorneys to perform—duties that, as respondent acknowledges, involve practicing law in this state. *See* ORS 9.160(1) ("[A] person may not practice law in this state *** unless the person is an active member of the Oregon State Bar."). Nothing more is required for the legislature to demonstrate its intention that district attorneys must possess the qualification of an active bar membership during the term of office. We, therefore, reject respondent's argument that an active membership in the Oregon State Bar is not a qualification required for serving as an Oregon district attorney.

2.   *The meaning of "ceases to possess"*

We are more persuaded, however, by respondent's alternative argument—that his brief suspension from the practice of law did not create a vacancy in the office of Wasco County District Attorney. As set out above, ORS 236.010(1)(g) provides that an office becomes vacant before the expiration of a term when, as pertinent here, "[t]he incumbent *ceases to possess* any other qualification required for election or appointment to such office." (Emphasis added.) According to the Attorney General, respondent "ceased" to possess a required qualification for election to the office of district attorney—active Bar membership—when his 60-day suspension began, and the office thus became vacant by operation of law. But respondent contends that "ceases" requires a change of circumstance that is more permanent than his brief suspension.

Resolution of this dispute boils down to what the legislature intended by the phrase "ceases to possess" in ORS 236.010(1)(g). Again, that presents a question that we resolve under the statutory-construction framework in *Gaines*, looking primarily to the text and context. 346 Or at 171. Because the word "ceases" is a term of common usage and is not specially defined for purposes of the statute, we assume that the legislature intended to use the term in a manner consistent with its plain, natural, and ordinary meaning. *See Kinzua Resources v. DEQ*, 366 Or 674, 681,

468 P3d 410 (2020) ("[W]e generally assume that the legislature intended to use the term in a manner consistent with its plain, natural, and ordinary meaning, and we often consult dictionaries for guidance in determining what the legislature would have understood a term to mean." (Internal quotation marks omitted.)). Dictionary definitions suggest that the ordinary meaning of "cease" imports a degree of finality to the condition or activity that is "ceasing," supporting respondent's proposed construction. *See Webster's Third New Int'l Dictionary* 358 (unabridged ed 2002) (defining the word "cease" as "to leave off : bring to an end : DISCONTINUE, TERMINATE").

Respondent argues that the legislature's intention to give "ceases" its ordinary meaning in ORS 236.010(1)(g) is demonstrated by the context of the other provisions in the same statute. In its entirety, ORS 236.010(1) provides:

"An office shall become vacant before the expiration of the term if:

"(a)   The incumbent dies, resigns or is removed.

"(b)   The incumbent ceases to be an inhabitant of the district, county or city for which the incumbent was elected or appointed, or within which the duties of the office of the incumbent are required to be discharged.

"(c)   The incumbent is convicted of an infamous crime, or any offense involving the violation of the oath of the incumbent.

"(d)   The incumbent refuses or neglects to take the oath of office, or to give or renew the official bond of the incumbent, or to deposit such oath or bond within the time prescribed by law.

"(e)   The election or appointment of the incumbent is declared void by a competent tribunal.

"(f)   The incumbent is found to be a person with a mental illness by the decision of a competent tribunal.

"(g)   The incumbent ceases to possess any other qualification required for election or appointment to such office.

"(h)   Appointment of the incumbent is subject to Senate confirmation under section 4, Article III of the Oregon Constitution, and the appointment is not confirmed."

As respondent points out, the statute consists primarily of a list of specific circumstances that will create a vacancy in public office. In contrast, the reference in paragraph (g) to the office holder ceasing to possess "*any other qualification*" suggests that paragraph (g) is a catch-all provision, intended to cover situations that are not covered by the other provisions.

Given that structure, respondent urges us to employ the principle of *ejusdem generis* to ORS 236.010(1) and conclude that the legislature intended the phrase "ceases to possess any other qualification" to describe a more significant event than his brief suspension for a disciplinary violation. Under the interpretive principle of *ejusdem generis*, "'a non-specific or general phrase that appears at the end of a list of items in a statute is to be read as referring only to other items of the same kind.'" *McLaughlin v. Wilson*, 365 Or 535, 551, 449 P3d 492 (2019) (quoting *Vannatta v. Keisling*, 324 Or 514, 533, 931 P2d 770 (1997), *overruled on other grounds by Multnomah County v. Mehrwein*, 366 Or 295, 462 P3d 706 (2020)).[8]

We agree with respondent that the structure of the statute as a whole suggests that the legislature intended the other circumstances listed in ORS 236.010(1) to describe more specific situations in which an office holder "ceases to possess" a qualification for the office. However, the other circumstances are not as helpful as respondent suggests to our understanding of the meaning of the word "ceases" in ORS 236.010(1)(g).

As noted above, the legislature added the catch-all provision of paragraph (g) in 1969. Or Laws 1969, ch 669, § 3. With the exception of paragraphs (g) and (h), the provisions contained in ORS 236.010(1) date to an act adopted

---

[8] As this court's statement in *McLaughlin*, 365 Or at 551, suggests, general catch-all provisions normally appear at the end of a list of specific items. That is, in fact, how ORS 236.010(1) appeared when paragraph (g) was originally enacted. Or Laws 1969, ch 669, § 3. At that time, ORS 236.010(1) listed only seven circumstances creating a vacancy, with paragraph (g) being the last. ORS 236.010(1) (1969). The final paragraph (h), dealing with the situation in which an appointee is subject to Senate confirmation under Article III, section 4, of the Oregon Constitution was added a decade later. Or Laws 1979, ch 351, § 3.

in 1870. *Fehl*, 177 Or at 205-06. We explained in *Fehl* that, "[m]anifestly, the 1870 act was not penal in nature"; rather "[i]ts purpose was the proper administration of the public business." *Id*. at 206.[9] Some of the paragraphs in ORS 236.010(1) describe events that would disqualify the person from validly taking office in the first place: failure to take the required oath or post the required bond within the time allowed, failure to obtain Senate confirmation for an appointment, or voiding of the election. ORS 236.010 (1)(d), (e), (h). Others describe events that will disqualify an office holder from completing the term of office: death, resignation, or recall; or conviction of an infamous crime. ORS 236.010(1)(a), (c). Each of those circumstance results in an enduring change in the office holder's status that would preclude the "proper administration of the public business."

However, the determination when an incumbent "ceases" to reside in the district, ORS 236.010(1)(b), or when an incumbent "ceases" to possess a required qualification, ORS 236.010(1)(g), necessarily is less clear cut. Depending on the circumstances, a temporary relocation to a home outside the district or a temporary suspension from the practice of law may or may not preclude the proper administration of public business. Thus, we are unable to determine, from the context of ORS 236.010(1) alone, whether the legislature intended that even a temporary change in an office holder's qualifications would cause a vacancy in the office.

The context provided by other statutes, however, persuades us that the legislature intended the phrase "ceases to possess any other qualification" in ORS 236.010 (1)(g) to capture an event carrying a greater degree of permanence than respondent's brief inability to practice law in this case. First, we discern significance in the context of what a vacancy means for a public office. As the Attorney General's position in this case reflects, events sufficient to

---

[9] In discussing the circumstance of conviction for an "infamous crime," the court explained that the authors of the 1870 act simply "did not believe that the public business should be transacted by any official against whom a judgment was entered during his term of office, which found him guilty of an infamous crime." *Id*.

cause a vacancy in public office are events of sufficient significance that the office holder must be replaced. That is the result contemplated by both the constitution and the legislature when there is a vacancy in public office. *See* Or Const, Art V, § 16 (providing that the Governor shall fill vacancies in state office "by appointment, which shall expire when a successor has been elected and qualified"); ORS 8.640 ("When a vacancy occurs in the office of district attorney, the Governor must appoint some suitable person to fill the vacancy until the next election and qualification of a successor at the next general election."); ORS 236.210 (describing a similar process for a vacancy in most elective county offices). Given that context, we understand the legislature to have intended that circumstances capable of rendering a public office vacant would be circumstances that change the office holder's status with a degree of permanence that is sufficient to justify requiring the Governor to appoint a successor for "the proper administration of the public business." *Fehl*, 177 Or at 206.

Second, and particular to the question of what circumstances will cause a district attorney to "cease[] to possess" a qualification for office, ORS 236.010(1)(g), we draw significant guidance from statutes that permit district attorney offices to continue the proper administration of the public business despite limited interruptions of the office holder's ability to practice law. The first statute of significance specifically contemplates that there can be gaps in the district attorney's ability to perform the duty of prosecuting cases. That provision, which is currently codified at ORS 8.710, specifies that, if "a district attorney fails to attend any court at which the district attorney is required to be" or is disqualified by an ethical conflict from prosecuting a particular case, then "the court shall appoint a regularly licensed and practicing attorney of this state *** to perform the duties of district attorney during the district attorney's absence or inability to serve." In addition, respondent emphasizes ORS 8.780, which directs district attorneys to appoint deputies who will have the authority to perform "the same functions as the district attorney." Those statutes indicate that the legislature would not have understood a district attorney's limited inability to practice law to be a

change in status sufficient to trigger a vacancy under ORS 236.010(1)(g).[10]

The Attorney General, nevertheless, offers one contextual counter-argument that we briefly address. She points to ORS 1.425(6), which provides that when the Supreme Court suspends a *judge* from office, the suspension "does not create a vacancy in the office of judge during the period of suspension." That provision was adopted in 1987 as part of a more comprehensive act governing complaints that a judge has a physical or mental disability that interferes with the judge's performance of judicial duties. Or Laws 1987, ch 520, § 3. By negative implication, the Attorney General contends, the legislature's failure to adopt a similarly explicit caveat for suspended district attorneys indicates that the legislature intended the suspension of a district attorney from the practice of law *would* create a vacancy in the office. Again, we emphasize that such negative-inference arguments "are often unhelpful in statutory interpretation," because "legislative inaction can stem from a variety of causes." *Lake Oswego Preservation Society*, 360 Or at 129. And we conclude that the Attorney General's argument is unhelpful, here. It is possible that the legislature's failure to adopt a similar provision addressing district attorneys stems from an intentional decision that a district attorney's suspension from the practice of law could give rise to a vacancy in the office. Given the broader context that we have discussed above, however, we are persuaded that the legislature did not intend that every suspension of a district attorney's ability to practice law would create a vacancy in the office.

3. *The significance of respondent's suspension*

Under the circumstances of this case, we conclude that respondent's 60-day suspension did not cause the office

---

[10] Respondent illustrates the alternative to declaring a vacancy by citing examples of other district attorneys who were suspended from the practice of law during their terms of office but, as the Attorney General does not dispute, continued to serve in those offices for some period of time. *See In re Leonhardt*, 324 Or 498, 504, 930 P2d 844 (1997) (Clatsop County District Attorney, suspended before being disbarred); *In re Glass*, 308 Or 297, 779 P2d 612 (1989), *reh'g den*, 309 Or 218, 784 P2d 1094 (1990) (Grant County District Attorney), and *In re Gustafson*, 327 Or 636, 968 P2d 367 (1998) (Clackamas County District Attorney).

of Wasco County District Attorney to become vacant. Our conclusion depends in significant part on the nature of respondent's suspension. In disciplinary cases generally, the potential sanction for an attorney who has violated the rules of professional conduct range from a public reprimand to disbarment and include a suspension as short as 30 days or as long as five years. BR 6.1. Some suspended attorneys must submit a formal application, or at least an informal application, for reinstatement to active membership in the Oregon State Bar. Both processes require affirmative showings by the applicant and denial of reinstatement as a potential outcome. *See* BR 8.1 (listing circumstances that require a formal application for reinstatement and describing the process); BR 8.2 (listing circumstances that require an informal application for reinstatement and describing the process); BR 8.3 (specifying that court or Disciplinary Board may direct in other circumstances that reinstatement is not automatic). However, respondent's right to be reinstated was not conditional, because he was suspended for less than six months and because this court did not direct otherwise in the suspension decision. BR 8.3; *Nisley*, 365 Or at 818. For a suspension like respondent's, the Bar rules of procedure specify that the person "shall be reinstated" upon the filing of a declaration that the lawyer complied with the requirements of the suspension and the payment of a $250 fee. *Id*. (requiring reinstatement upon the filing of a compliance declaration and payment of fee, "unless the court or Disciplinary Board in any suspension order or decision shall have directed otherwise"); BR 13.9 (describing the Compliance Declaration filed to satisfy BR 8.3).[11]

Considering all of the circumstances, we conclude that respondent's suspension did not create a vacancy. We emphasize: Respondent's change of status with respect to his ability to practice law was transient, because his right to be reinstated to active membership in the Oregon State Bar was assured, and the interruption of his ability to practice law was brief—not only in absolute duration but also in relation to the range of potential disciplinary suspensions.

---

[11] That right to reinstatement without an application is not available if the person, although given a disciplinary suspension of less than six months, waits more than six months to seek reinstatement. BR 8.1(a)(5).

Moreover, respondent's suspension was scheduled from the outset to end many months before the expiration of his term of office. Given the alternative mechanisms that the legislature has provided to accommodate that kind of limited interruption of a district attorney's ability to perform the duties of office, we are persuaded that respondent's brief and transient inability to practice law was not what the legislature intended to describe with the phrase "ceases to possess" a qualification for holding office, within the meaning of ORS 236.010(1)(g). Accordingly, the office of Wasco County District Attorney did not become "vacant," and respondent remains the rightful holder of the office until the expiration of his term of office.

Judgment to issue that respondent currently holds the office of Wasco County District Attorney.